JULIA LUCAS *et al.,* Paintiffs in Error, *v.* JOHN HARRIS, Defendant in Error.

ERROR TO MARSHALL.

On a bill to foreclose a mortgage, the note or bond to secure which the mortgage was given, should be produced, or its non-production properly accounted for.
This rule should be especially regarded in old transactions.
The holder of the obligation secured by a mortgage, can control the mortgage.
A release of a debt secured by a mortgage need not be under seal.

THE defendant, John Harris, who was complainant below, filed his bill in the Circuit Court of Marshall county, on the 8th day of February, 1856, alleging that on the 12th day of May, 1837, Edwin Mills, of the State of New York, was indebted to the complainant in the sum of $700, for the purchase money of S. E. 27, 30 N., 1 W., 3rd P. M., and executed a mortgage to complainant for said premises and two other lots, dated May 12th, 1837, a copy of which is set out in the bill.

He avers that on the 8th day of November, 1855, the mortgage was recorded in the recorder's office of Marshall county, being the county in which the land lay.

Avers that the debt of $700 mentioned in the mortgage has never been paid, nor any part of it, nor interest, and that the same became due on the 9th day of September, 1838, and that a note was given for the said debt, falling due Sept. 9, 1838.

He further charges that after the execution of the mortgage to complainant, to wit: on the 13th day of January, 1839, the said Edwin Mills also executed a mortgage to his brother, Harlow Mills, for a pretended debt of $2,000, on said quarter section of land and other lands.

Charges that said Edwin Mills was not, at the time of the execution of the mortgage, indebted to Harlow Mills in $2,000 or any other sum, but that the same was made to hinder and delay complainant in the collection of his debt.

That the said mortgage to said Harlow Mills was recorded on the 2nd day of March, 1839, and prior to the recording of complainant's mortgage.

Charges that said Harlow Mills had notice of the complainant's mortgage at the time of the making of the mortgage to him, and afterwards promised complainant to pay the same, and that said Harlow Mills frequently admitted to others that he knew of complainant's mortgage, and that the same was unpaid.

The complainant further charges that on the 17th day of February, 1842, the said Edwin Mills and Eliza Ann his wife, for the consideration of $2,100, as expressed in their deed, executed a deed of that date to Harlow Mills, and purporting to make the deed subject to the mortgage of Harlow Mills, and stating therein that the mortgage formed a part of the consideration of the deed.

He charges that at the time of the execution of the deed the said Harlow Mills had notice of complainant's mortgage, and agreed to pay the same.

That Harlow Mills died intestate, on or about the 20th day of October, 1845, and that his widow, Julia Mills, since intermarried with one John Wilson, was appointed administratrix of his estate, and that the said John Wilson also died on or about the year 1845, and that Harlow Mills left, as children and heirs at law, Julia, a minor, now intermarried with James P. Lucas, and William Henry and John Gale, also minors, and that said children and widow are yet the legal owners of the said quarter section of land.

Claims that the said quarter section should be subject to the payment of his mortgage, and have preference of the one execution to Harlow Mills, and that no good or valuable considera-

tion ever passed for the execution of the deed, except the pretended debt of $2,000 specified in the mortgage.

The bill prays that said widow and heirs of Harlow Mills be made parties, and that guardians be appointed, and that the land be sold to pay off the mortgage and interest of complainant.

At the April term, 1856, the respondents answered the complainant's bill, denying that Edwin Mills, on the 12th day of May, or at any other time, was indebted to the complainant in the sum of $700 or any other sum, for the purchase money of said quarter. Deny that said Edwin Mills ever executed the mortgage to complainant, as charged in the bill, and that if any such mortgage was made to complainant, it was without consideration. They admit that a certain paper, claimed to be a mortgage, was recorded on the 8th day of November, 1855. Deny that the sum of $700 or any other sum was due complainant at the filing of the bill.

They admit that on the 13th day of January, 1839, Edwin Mills and wife executed to Harlow Mills a mortgage on the land in controversy and other lands mentioned in the bill. They deny that the mortgage to Harlow Mills was for a pretended debt, and aver that the sum of $2,000 had been due and owing from the said Edwin Mills to said Harlow Mills from the 28th day of June, 1837.

They deny that the mortgage from Edwin to Harlow Mills was made to delay, hinder or defraud the complainant or any other person, and admit that the said mortgage to Harlow was recorded on the 2nd day of March, 1839.

They deny that said Harlow Mills had knowledge in any manner of any mortgage to complainant, and deny that said Harlow ever promised to pay the same.

They deny that Harlow Mills ever acknowledged the existence of a mortgage to complainant as charged. They admit the execution of the deed on the 17th of February, 1842, from Edwin Mills and wife to Harlow Mills, of the premises and others for the sum of $2,100, and deny any knowledge of complainant's mortgage by said Harlow at the time of the execution of the deed.

They admit the death of Harlow Mills; that his widow intermarried with John Wilson, and that he died in 1855 and not in 1845, and that he left the children and heirs at law as mentioned in the bill, and that Julia is married to James P. Lucas.

They deny that there was no good and valuable consideration for the execution of the mortgage and deed, but that the same was *bona fide* and for valuable consideration.

They deny that said Edwin Mills ever owed any sum of

money whatever, or made any mortgage whatever to said complainant, and if any ever was made, deny that it was ever known to said Harlow Mills or his heirs.

They insist that the statute of limitations is a bar to the action, and also that the lapse of time bars any recovery on the mortgage.

That at the time of the execution of the mortgage and deed, the lands conveyed in said mortgage and deed did not exceed $1,000.

The complainant put in general replication. A guardian *ad litem* was appointed by the court for the minors, and who filed his answer denying any knowledge of the facts charged in the bill, and calling for proof, and that the rights of the minors be protected by the court.

At the April term, on the 18th day of April, 1856, the appearance of Edwin Mills was withdrawn by leave of the court, and on the 21st day of Oct., 1858, the complainant took his deposition, which was read on the hearing.

There was no proof whatever in relation to the note to secure which this mortgage was given, but the proof related to the mortgage to Harlow Mills.

The case was submitted to BALLOU, Judge, at the October term of the Marshall Court, 1857, who rendered a decree in favor of complainant for the sum of $1,501.50, and in default of the payment thereof within twenty days, that the mortgaged premises be sold to satisfy the same, after giving four weeks notice by publication; and in case the said mortgaged premises should not sell for enough to satisfy the said amount of said decree, that execution issue against Edwin Mills for the remainder, as on judgments at law.

At the October term, 1857, the defendants entered a motion to vacate the decree for the following reasons, and which motion was overruled:

The debt was barred by the statute of limitations.

Because the note was not produced in evidence, and under such circumstances the court ought to presume the debt paid.

Because of the lapse of time the debt ought to be presumed paid.

Because the court erred in admitting the deposition of Mills in evidence when he was a party to the suit and interested in having a decree rendered against the premises.

Because the evidence was insufficient to authorize a recovery.

Because the note described in the mortgage was not produced in the case.

Because the decree was for too large a sum.

Because the bill was insufficient, not setting out the note nor showing when it became due, nor what rate of interest it bore, if any, nor when interest commenced running.

No notice was proven to Harlow Mills before nor at the time he took his mortgage on the premises.

The payment of taxes was a bar to complainant's recovery, the land being vacant and unoccupied.

The bill does not allege, and it was not proven, that the money could not be collected of Edwin Mills.

WEAD & WILLIAMSON, for Plaintiffs in Error.

N. H. PURPLE, for Defendant in Error.

BREESE, J. Without going into the merits of this case, it is sufficient to say that one defect appears which must reverse this decree.

The bill alleges that a note was executed at the date of the mortgage, and for the same sum of money—both on the 9th September, 1838—and the note payable on that day.

Now, it is well understood that the note is the principal thing, the mortgage being only the incident. It is a security given for the debt mentioned in the note, and nothing more, for the mortgagor remains the real owner of the land, if of land, until the breach of the condition and entry by the mortgagee, or foreclosure. Until this time it is personal estate, and passes as personal property upon the death of the mortgagee. The principal right of the mortgagee is to the money, and his right to the land is only as security for the money. A release of a debt secured by mortgage need not be under seal. *Ryan* v. *Dunlap*, 17 Ill. R. 40.

In *Jackson ex dem.* v. *Willard*, 4 Johns. R. 42, Chief Justice KENT says : " Lord Hardwicke held that, at law, a discharge of a mortgage debt *by* parol was considered as a discharge of the mortgage ; that even the law considers the debt as the principal, and the land as an accident only." He further says : " It is but an incident attached to the debt, and in reason and propriety, it cannot, and ought not to, be detached from its principal. The mortgage interest, as distinct from the debt, is not a fit subject of assignment. It has no determinate value. If it should be assigned, the assignee must hold the interest at the will and disposal of the creditor who holds the bond. The control over the mortgaged premises must essentially reside in him who holds the debt. It would be absurd in principle, and oppressive in practice, for the debt and the mortgage to be separated, and placed in different and independent hands."

If this be so, and we do not question it,·it is all-important, on a bill filed to foreclose, or to sell, that the note should be produced, or a good account given for its non-production.    It would be absurd to deal with an " accident," as Lord Hardwicke calls a mortgage, without accounting for the main fact or principal thing.

And this rule should hold, especially in old transactions like this, and not free from suspicions of its fairness.

The mortgage and note were both executed on the 9th September, 1838, the note payable on that day.    The mortgagor died in 1845, and the mortgage deed not placed on record until ten years after the mortgagor's death.    All these very suspicious circumstances may be explained, and before any decree can pass in complainant's favor, they must be explained, and the non-production of the note clearly and satisfactorily accounted for.    It may be that the note has been paid long since, and that is a reasonable presumption ; or, it may be in the hands of another party, who, holding it, would have a right to control this security.    *Reavis et al.* v. *Fielden,* 18 Ill. R. 77.

The decree of the Circuit Court is reversed and the cause remanded.

*Decree reversed.*