WILLIAM W. WALKER *vs.* GEORGE B. OSWALD, Clerk of the Circuit Court for Washington County.

*High License Act—Election—Majority of Votes cast—Voters absent—Voters present who Abstain from Voting—Acquiescence.*

Section 7, of the Act of 1886, ch. 248, "to regulate the sale of spirituous, fermented and intoxicating liquors in Washington County," provides that "the voters of said county, at the general election then to be held, shall determine by ballot whether or not the provisions of this Act shall go into effect in said county;" that "those favoring the Act will cast their ·ballots with the words written or printed thereon, 'For the High License Law;' and those opposing the Act will cast their ballots with the words written or printed thereon, 'Against the High License Law;'" and that "it shall be the duty of the judges of said election to make a full return of the ballots cast as aforesaid, as now provided by law, to the clerk of the Circuit Court for Washington County, who, upon the certified returns, shall immediately make proclamation as to the result of said election." Section 8, of said Act, provides "that if a majority of the voters of said county, shall determine by their ballots in favor of the 'High License Law,' and the clerk of said Court shall so proclaim to the people of said county, the provisions of this Act shall take effect on the first day of May, 1887." HELD:

That sections, seven and eight, construed together, mean that the Act was to become operative and effective if it received, at the general election referred to, the approval of a majority of the voters of the county voting on that subject.                    •

When an election is held at which a subject-matter is to be determined by a majority of the voters entitled to cast ballots thereat, those absenting themselves, and those who, being present, abstain from voting, are considered as acquiescing in the result·declared by a majority of those actually voting, even though, in point of fact, but a minority of those entitled to vote really do vote.

APPEAL from the Circuit Court for Washington County.

Walker vs. Oswald.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J., for the appellant, and submitted on brief for the appellee.

*Edward Stake*, for the appellant.

When more than one question is submitted to the voters at a *general election*, it must appear that a majority of all the votes cast at that election were in *favor of any of the questions submitted*, and not merely a majority of *the vote* cast upon any single question.    *State vs. Winkelmeier*, 35 *Mo.*, 103 ;  *State, ex rel. Jones vs. Co. Comm'rs of Lancaster County*, 6 *Nebraska*, 474 ;  *Bayard vs. Klinge*, 16 *Minn.*, 249;  *People vs. Wiant*, 48 *Ill.*, 263 ;  see *State vs. Satterfield*, 54 *Mo.*, 391.

As it is admitted in this case that 8680 voters voted at the general election, and that 4314 voted in favor of the High License Law, the figures show that the law was not approved by a majority of the voters of Washington County, and therefore failed to become operative and of effect in Washington County.    The appellant therefore asks this Court to reverse the decision of the Circuit Court for Washington County, and to direct said Court to issue a peremptory writ of *mandamus* to the appellee.    See *State vs. Linn Co.*, 44 *Mo.*, 504;  *Gillespie vs. Palmer*, 20 *Wis.*, 544 ; *People vs. Brown*, 11 *Ill.*, 479 ;  *Re County Seat of Linro County*, 15 *Kansas*, 530;  *People vs. Warfield*, 20 *Ill.*, 163 ; *People vs. Garner*, 47 *Ill.*, 246.

The counsel for the appellant *admits*, that where a *single question* or proposition is submitted to the voters at a special election, a *majority of the votes cast* must decide it, as there can be no other practicable way of determining it, and " that all qualified voters who *absent* themselves from an election duly called are presumed to assent to the expressed will of the majority of those voting, unless the law provid-

ing for the election otherwise declares." *County of Cass vs. Johnston,* 95 *U. S.,* (5 *Otto,*) 360.

This admission in no wise conflicts with our position, that when more than one question is submitted to vote at a *general election,* the votes of a majority voting at *that general election* must be in favor of the proposed law, to give it the force and effect of law. In the case now at bar, the Act of Assembly expressly requires the votes of a majority of the voters of said county,. and the admitted votes show that the law did not receive such sanction.

As evidence of what the Legislature meant, see Act of 1886, chap. 291, sec. 3, and Acts of 1886, chaps. 244, 382, 383.

As to construction of the statute, reference may be had to *Dwarris on Stat.,* 9 *Law Lib.,* 702, and to *Medley vs. Williams,* 7 *Gill & J.,* 71.

*M. L. Keedy,* and *Frederick F. McComas,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

By an Act of the General Assembly of Maryland, passed at the January session of eighteen hundred and eighty-six, chapter two hundred and forty-eight, after making provision as to the mode of procuring and the price to be paid for a license authorizing the sale of spirituous, fermented and intoxicating liquors in Washington County, it is enacted as follows :

"Sec. 7. *And be it enacted,* That upon the first Tuesday after the first Monday of November, eighteen hundred and eighty-six, the voters of said county at the general election then to be held, shall determine by ballot whether or not the provisions of this Act shall go into effect in said county; those favoring the Act will cast their ballots with the words written or printed thereon, 'For the High License Law,' and those opposing the Act will cast their ballots with the

Walker *vs.* Oswald.

words written or printed thereon, 'Against the High License Law,' and it shall be the duty of the judges of said election to make a full return of the ballots cast as aforesaid, as now provided by law, to the clerk of the Circuit Court for Washington County, who, upon the certified returns, shall immediately make proclamation as to the result of said election."

"Sec. 8. *And be it enacted,* That if a majority of the voters of said county shall determine by their ballots in favor of the 'High License Law,' and the clerk of said Court shall so proclamate to the people of said county, the provisions of this Act shall take effect on the first day of May, eighteen hundred and eighty-seven."

At the general election which was held on the second day of November, eighteen hundred and eighty-six, in Washington County, the aggregate number of votes cast for the several candidates for Congress, was eight thousand six hundred and eighty. The number of votes cast "for the high license law" was four thousand three hundred and fourteen, and the number "against the high license law" was three thousand eight hundred and twenty-five. On the fifth day of November the Clerk of the Circuit Court for that county issued his proclamation setting forth the number of votes cast, both for and against the high license law, and certifying and declaring "that it appears from said returns, now on file in my office, that upon said question a majority of the voters of said county have determined by their ballots in favor of the 'high license law.'"

On the second of May following, the appellant, a dealer in spirituous, fermented and intoxicating liquors, in the county named, applied to the Clerk of the Circuit Court for a license authorizing him to sell such liquors, and tendered to the clerk, in payment for the license, the amount fixed by the general license laws of the State, which amount was less than that prescribed by the Act now under consideration. The clerk refused to issue the

license to the appellant unless he would pay the sum named in the Act now in question, and would also comply with the other provisions thereof. Upon such refusal the appellant filed in the Circuit Court for Washington County a petition charging that "in truth and in fact a majority of the voters of said county at said election, have not determined by their ballots in favor of the high license law, and that said clerk has not correctly and truly proclamated the result of said election in accordance with the requirements of said Act of Assembly;" and praying for a writ of mandamus against the appellee, the Clerk of that Court, requiring him to issue to the appellant the license previously applied for, without a compliance on the part of the appellant with any of the provisions of the Act now before us. The appellee answered this petition, and a statement was filed showing the number of votes cast at said general election upon this measure and for the congressional candidates; and a *pro forma* order was passed refusing the writ. From that order this appeal has been taken.

It thus appears, and in fact it is conceded, that the number of votes cast in favor of the high license law was not equal to a majority of all the votes cast at the same election for the several candidates for Congress; though the votes actually cast in favor of this law constituted a majority of all the votes polled on that particular subject. The single question, therefore, presented by this appeal is, whether, under these circumstances, the Act became operative and effective; or, stated in other words, did the adoption of the Act depend upon its receiving in its favor a majority of all the votes cast at that election upon some other subject or subjects; or upon its receiving a majority of the votes cast specifically for and against its adoption?

It has been settled, both in England and in this country, by an almost, if not quite, unbroken current of judicial decisions from the time of Lord MANSFIELD to the present day, that when an election is held at which a subject-mat-

ter is to be determined by a majority of the voters entitled to cast ballots thereat, those absenting themselves and those who being present abstain from voting, are considered as acquiescing in the result declared by a majority of those actually voting; even though, in point of fact, but a minority of those entitled to vote, really do vote.    Thus in *Oldknow vs. Wainwright*, 2 *Burr.*, 1017, which was a feigned action to try a right of election to the office of town clerk of Nottingham, the fourth issue was "whether Thomas Seagrave was duly elected by" the Mayor, Aldermen and Common Council; and there was a special verdict, wherein after setting out the constitution of the borough, that the voices were all equal votes, the vacancy of the office of town clerk and a regular summons to elect another, it proceeded as follows: "That the whole number of electors was twenty-five ; and that out of that number, twenty-one assembled on the twenty-sixth of May, pursuant to the said summons; that the Mayor put Thomas Seagrave in nomination, and that no other person was put in nomination; that nine of the twenty-one voted for him, but twelve of them did not vote at all, but eleven of them *protested* against any election at that time," &c., Lord MANSFIELD held : "Whenever electors are present, and don't vote at all (as they have done here) they virtually acquiesce in the election made by those who do."    Judge FOLGER in *People, ex rel. Furman vs. Clute*, 50 *N. Y.*, 461, delivering the opinion of the Court says:    "It is also the theory and practice of our government, that a minority of the whole body of qualified electors may elect to an office when a majority of that body refuse or decline to vote for any one for that office.    Those of them who are absent from the polls, in theory and practical results, are assumed to assent to the action of those who go to the polls, and those who go to the polls and do not vote for any candidate for an office are bound by the results of the action of those who do," &c.

Conceding this to be true with respect to a *special* election held for the purpose of submitting a *single* question to the popular vote, it is insisted on the part of the appellant, that a different principle should prevail in a case like this where, at a general election, the measure, though receiving a majority of the votes cast on *that* subject, failed to receive a majority of the votes cast upon some *other* subject. Hence, as we have already stated, the sole ground upon which it is claimed that the Act in question failed to become effective is, that at the general election when the subject was voted on, less than a majority of those who voted for the Congressional candidates cast their ballots "for the high license law;" and not that a majority of those who voted *on this subject* did not vote in favor of it. This objection to the adoption of the Act is founded exclusively upon the construction which is sought to be placed upon the words of the eighth section—"a majority of the voters of said county "—taken in connection with the evidence furnished by the vote on the congressional canvass, that there were more votes in the county than the number who voted upon this measure. If this construction, which confines the language to what is alleged to be its literal import, without reference to the provisions of the preceding section, is to prevail, it would be, it seems to us, as applicable in the case of a special election where but one subject is submitted, as it is claimed that it is in the case of a general election, where several subjects or persons are to be voted for—the only difference between the two instances being in respect to the evidence which might be adduced to ascertain the actual number of the voters of the county. In regard to a general election it is urged that the highest aggregate vote cast furnishes the evidence as to the number of the voters of the county. At a special election it is not improbable that only a minority of the voters, well known to be an unmistakable minority, may vote. This fact might be susceptible of proof,—might be in reality self-evi-

dent.   Yet in the latter instance those who absent them-
selves from the polls, and those who being present abstain
from voting, are regarded as assenting to the result declared
by those who do vote.   Upon what principle would it be in-
competent to apply the same presumption to those, who,
though attending a general election and voting on other
subjects, abstain from voting upon one particular matter like
the Act in question?   The very concession that a minority
may elect necessarily implies that there is a larger num-
ber of voters who do not vote, of whom that minority is
merely a fraction.   Hence, the admission that a majority of
those entitled to vote did not vote, does not preclude the
minority who actually do vote from determining the result
by their ballots.   That is precisely what was decided in
*Oldknow vs. Wainwright,* where there were twenty-five
entitled to vote, of whom twenty-one were present, and only
nine voted, and eleven protested against an election.   The
special verdict showed how many voters there were, how
many were present and that only a minority voted; and
yet it was held that the election by that minority was per-
fectly valid.

  Recurring to the language of the Act, it will be observed
that the Legislature has with particularity provided the
forms of the ballots, both *for* and *against* the high license
law; and that it has prescribed that "a full return of the
ballots cast as aforesaid," that is, cast *for* and *against* the
Act, should be made by the judges of election to the
clerk, and that the latter, "upon the certified returns,
shall immediately make proclamation as to the result of
said election."   What possible reason was there for the
Legislature making provision with such exactness for "a
full return of the ballots cast," both *for* and *against* the
high license law, and for a proclamation by the clerk upon
the certified returns, if it was not designed that exclusive
reference to the votes cast on *that* subject should be had
in determining whether the Act did or did not become

operative? It is perfectly manifest that the phrase, "full returns of the ballots cast as aforesaid," refers to the votes cast for and against the high license law and to no other votes; and that the duty of the clerk to "make proclamation as to the result of said election," could only be performed by announcing the result as evidenced by the certified returns of the votes cast upon *that* subject. If, therefore, he was confined in making his proclamation as to the result of the election, to the returns made to him of the votes cast for and against the adoption of this Act, no votes cast at the same election for some other purpose can be considered, counted or resorted to in determining the question of the approval of this measure. Indeed, had the Legislature intended that the Act should not become effective unless a majority of all the voters of the county affirmatively voted for it, it is difficult to conjecture a reason for the insertion of the provision respecting the casting and counting of votes *against* the measure, because, upon the assumption that the construction contended for is correct, if the votes cast in favor of the Act had not been equal to a majority of all the voters voting for some candidate or for some other measure at that election, the Act would have failed to take effect, notwithstanding no votes had been cast against it at all; and consequently it would have been wholly unnecessary to make any provision whatever for casting ballots *against* the adoption of the law. The proclamation which the Clerk is directed to make, is "as to the result of *said* election," that is, the election held upon *this* question. The eighth section of the Act must be read in conjunction with the seventh section, which we have been considering; and thus read, clearly means not a majority of all the voters of the county voting on some other subject, but a majority of all the voters of the county who vote upon *this Act*. The contrary construction would place these two sections in an-

tagonism, and would cause the eighth to render nugatory the provisions of the seventh section.

The conclusion which we have reached is fully supported by the Supreme Court of the United States in *Saint Joseph Township vs. Rogers*, 16 *Wall.*, 644, where the language "a majority of the legal voters of the township," was held to "require only a majority of the legal voters of the township voting at the election," &c. ; and by the same Court in *The County of Cass vs. Johnston*, 95 *U. S.*, (5 *Otto*,) 360. In this last named case all the cases relied upon by the appellant are reviewed, and the majority of the Court through Chief Justice WAITE, states the question there presented as follows : "The first question presented for our determination in this case is, whether the 'Township Aid Act' of Missouri is repugnant to Art. XI, sec. 14, of the Constitution of that State, inasmuch as it authorizes subscriptions by townships to the capital stock of railroad companies wherever two-thirds of the qualified voters of the township voting at an election called for that purpose shall vote in favor of the subscription, 'while the Constitution prohibits such a subscription, 'unless two-thirds of the qualified voters of the * * * town, at a regular or special election to be held therein, shall assent thereto."

The Court quotes with approval the construction placed by the same tribunal in 16 *Wall.*, upon the clause "a majority of the legal voters of a township," and adds, "this we understand to be the established rule as to the effect of elections, in the absence of any statutory regulation to the contrary. All qualified voters who absent themselves from an election duly called are presumed to assent to the expressed will of the majority of those voting, unless the law providing for the election otherwise declares. Any other rule would be productive of the greatest inconvenience, and ought not to be adopted, unless the legislative will to that effect is clearly expressed."

Other cases to the same effect might be cited, but it is not deemed necessary to do so.

Being of the opinion, for the reasons assigned and upon the authorities quoted, that the two sections construed together clearly mean that the Act was to become operative and effective if it received, as it did, at the general election referred to, the approval of a majority of the voters of the county voting on *that* subject, we will affirm the order appealed from.

*Order affirmed.*