(December 24, 1896.)

## GREEN v. STATE BOARD OF CANVASSERS.
[47 Pac. 259.]

AMENDING CONSTITUTION—SECTION 1, ARTICLE 20, CONSTRUED.—Under
the provisions of section 1, article 20, of the constitution of
Idaho, providing for the amendment of the constitution, where a
majority of the electors voting upon that question vote in favor
of the amendment, the same is ratified, although the votes thus
cast are not a majority of the votes cast at the general election
for state officers.

(Syllabus by the court.)

Original proceeding in supreme court by writ of review.

Hawley & Puckett, W. E. Borah and Miles W. Tate, for
Plaintiff.

Under provisions of the constitution an amendment will
carry when it is properly submitted to the people, and a ma-
jority of those voting upon the question cast their ballots in its

favor, regardless of the number of voters voting upon other questions. (*City of South Bend v. Lewis,* 138 Ind. 535, 37 N. E. 986.)    Judge Cooley, in his work on Constitutional Limitations, sixth edition, note 1, page 747, cites a large number of authorities bearing upon the questions involved, and frankly says it is impossible to harmonize the cases. (*Walker v. Oswald,* 68 Md. 146, 11 Atl. 711; *Dayton v. City of St. Paul,* 22 Minn. 400.)    The constitution of Minnesota, section 2, article 14, provides, as does section 3 of article 20 of our constitution, that, in the matter of voting for a constitutional convention, a majority of all the voters voting at the election is required. (*Taylor v. Taylor,* 10 Minn. 181; *State v. McBride,* 4 Mo. 303, 29 Am. Dec. 636.)    The supreme court of the United States in *St. Joseph Township v. Rogers,* 16 Wall. 644, construed the effect of the phrase "a majority of the legal voters of a township" as referring only to the majority of the legal voters voting at an election, and not a majority of all the voters. (*County of Cass v. Johnston,* 95 U. S. 360; *Carroll v. Smith,* 111 U. S. 556, 4 Sup. Ct. Rep. 539; *State ex rel. Larabee v. Barnes,* 3 N. Dak. 319, 55 N. W. 883; *People v. Clute,* 50 N. Y. 461, 10 Am. Rep. 508; *Board v. Winkley,* 29 Kan. 36; *Armor Bros. v. Commissioners,* 41 Fed. 321; *Metcalfe v. City of Seattle,* 1 Wash. 308, 25 Pac. 1010; Constitutional Provisions Amendments, 24 Kan. 700; *Gillespie v. Palmer,* 20 Wis. 544; *Sanford v. Prentice,* 28 Wis. 358; *Louisville R. R. v. County Court,* 1 Sneed, 637-692, 62 Am. Dec. 424; *State v. Mayor etc.,* 37 Mo. 270; *State v. Satterfield,* 54 Mo. 391; McCrary on Elections, secs. 87, 173; Angell and Ames on Corporations, secs. 499, 500; *State v. Echols,* 41 Kan. 1, 20 Pac. 523; *Southworth v. Palmrya etc.,* 2 Mich. 287; *Pacific Imp. Co. v. City etc.,* 74 Fed. 528; Endlich on Interpretation of Statutes, sec. 388, note B, p. 543; *State v. Babcock,* 17 Neb. 188, 22 N. W. 372.)    It is fair to assume that both the legislature and the constitutional convention would, if it was their intention to require a majority of all the electors in the state, or all that registered, or all that voted, to vote in favor of the proposed amendment, to have outlined some method of determining the actual number of such electors. (*Carroll County v. Smith,* 111 U. S. 564, 565, 4 Sup. Ct. Rep. 539.)

George M. Parsons, Attorney General, and Johnson & Johnson, for Defendants.

Indiana has an identical provision with ours in her constitution regarding amendments. (Ind. Const., art. 16, sec. 1.) In construing it that court declares that there can be no amendment by a plurality. (*State v. Swift*, 69 Ind. 505.) A distinction will be observed in our constitution, as well as that of Indiana, between voting to ratify an amendment to the constitution and voting to elect an officer—a plurality vote will elect an officer, but a majority vote is required in case of amendment. (Compare sec. 2, art. 4, and sec. 1, art. 20.) An examination of our constitution may be profitable. Compare the words used in section 1, of article 20, "if a majority of the electors shall ratify the same," and the words used in section 3 of the same article, "a majority of all the electors voting at said election." The wording of the last section creates a limitation in requiring only a majority of those actually voting at the election, while in the first section the constitution directs that the question of the adoption of the amendment shall be submitted to the "electors of the state," and that a majority of them shall vote in favor of the proposed amendment before it is ratified and made a part of our fundamental law. The authorities, even those cited by counsel on the other side, will show that courts, in construing constitutional or statutory provisions that prescribed that a majority of the electors of a county, a township or a district should vote upon a given proposition in order to carry it, have only compelled the harsh lines of the law to yield to judicial construction to the extent that it would be presumed by the courts that all the electors had discharged their duty by casting their votes, and, as said by Justice Clifford (16 Wall. 664), that fact "would necessarily be determined by a count of the ballots." (*People v. Warfield*, 20 Ill. 163; *People v. Gardner*, 47 Ill. 246; *People v. Wiant*, 48 Ill. 263; *Louisville etc. R. R. v. Davidson Co.*, 1 Sneed, 692, 62 Am. Dec. 424; *Cass Co. v. Johnston* 95 U. S. 360; *City of South Bend v. Lewis*, 138 Ind. 512, 37 N. E. 986; *State v. Brassfield*, 67 Mo. 331, 340; *Hawkins v. Carroll Co.*, 50 Miss. 735, 736; *Cocke v. Gooch*, 5 Heisk. 294, 310; *Fort Worth v. Davis*, 57 Tex. 225, 234.)

Indifference is not the test; an active and expressed approval is necessary. (*Duke v. Brown,* 96 N. C. 127, 131, 1 S. E. 873; *Bayard v. Klinge,* 16 Minn. 249; *Taylor v. Taylor,* 10 Minn. 81; *Everitt v. Smith,* 22 Minn. 53; *People v. Wiant,* 48 Ill. 263, 266; *Chestnutwood v. Hood,* 68 Ill. 132.) The construction for which we contend is clearly sustained by the cases of *State v. Winklemeier,* 35 Mo. 103; *State v. Sutterfield,* 54 Mo. 391; *State v. Brassfield,* 67 Mo. 331; *State v. Mayor,* 73 Mo. 435, 437; *Hawkins v. Carroll Co.,* 50 Miss. 735; *Norment v. City of Charlotte,* 85 N. C. 387; *Duke v. Brown,* 96 N. C. 127, 1 S. E. 873; *Sutherland v. Goldsborough,* 96 N. C. 49, 1 S. E. 760; *Cocke v. Goosh,* 5 Heisk. 294; *Braden v. Stumph,* 16 Lea, 581; *Hoagland v. Labaw,* 32 N. J. L. 269; *People v. Trustees,* 70 N. Y. 28; *State v. Lancaster Co.,* 6 Neb. 474; *State v. Babcock,* 17 Neb. 188, 22 N. W. 375; *State v. Anderson,* 26 Neb. 517, 42 N. W. 422; *Wilson v. Florence,* 39 S. C. 397, 17 S. E. 835; *Stebbins v. Judge Superior Court,* 108 Mich. 693, 66 N. W. 594; *People v. Berkeley,* 102 Cal. 298, 36 Pac. 591. In *State v. Langlie,* 5 S. Dak. 594, 67 N. W. 959, the supreme court of North Dakota says: "It is to be observed that when the law-making power of a state has desired to make the highest vote at the same election the standard, it has said so in unambiguous terms, as by requiring that there shall be a majority, etc." (*Enyart v. Trustees,* 25 Ohio St. 618; *State v. Roper,* 46 Neb. 729, 61 N. W. 753.) A majority of the electors voting is required under section 1, article 20. It is a constitutional provision that must be regarded. (*State v. Babcock,* 17 Neb. 188, 22 N. W. 375; *State v. Anderson,* 26 Neb. 517, 42 N. W. 422; *People v. Brown,* 11 Ill. 480; *People v. Wiant,* 48 Ill. 266; *Everett v. Smith,* 22 Minn. 53.)

HUSTON, J.—The constitution of the state of Idaho contains the following provisions in regard to amendments of that instrument:

"Article 20.

"Amendments.

"Section 1. Any amendment or amendments to this constitution may be proposed in either branch of the legislature, and if the same shall be agreed to by two-thirds of all the

members of each of the two houses, voting separately, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered on their journals; and it shall be the duty of the legislature to submit such amendment or amendments to the electors of the state at the next general election, and cause the same to be published without delay for at least six consecutive weeks, prior to said election, in not less than one newspaper of general circulation published in each county; and if a majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution.

"Sec. 2. If two or more amendments are proposed, they shall be submitted in such manner that the electors shall vote for or against each of them separately.

"Sec. 3. Whenever two-thirds of the members elected to each branch of the legislature shall deem it necessary to call a convention to revise or amend this constitution, they shall recommend to the electors to vote at the next general election for or against a convention; and if a majority of all the electors voting at said election shall have voted for a convention, the legislature shall, at the next session, provide by law for calling the same; and such convention shall consist of a number of members not less than double the number of the most numerous branch of the legislature.

"Sec. 4. Any constitution adopted by such convention shall have no validity until it has been submitted to, and adopted by, the people."

The legislative assembly of the state of Idaho, at its third session, submitted to the people, under said constitutional provisions, the following amendment of the constitution: "Shall section 2 of article 6 of the constitution of the state of Idaho be so amended as to extend to women the equal right of suffrage?" The vote as returned by the canvassing board upon said question was as follows: "For proposed amendment extending to women the equal right of suffrage: For, twelve thousand one hundred and twenty-six; against, six thousand two hundred and eighty-two." And upon this return said board declares said amendment not adopted; and petitioner brings

her action for a review of the action of said board of canvassers in this behalf.

The only question submitted to us for decision is as to the construction to be given to the last paragraph of section 1 of article 20, above quoted: "And if the majority of the electors shall ratify the same, such amendment or amendments shall become a part of this constitution." The question presented is by no means a novel one. In fact, so able and experienced a jurist as Judge Thomas M. Cooley admits (Cooley's Constitutional Limitations, 6th ed., 747, note 1) that "it must be confessed that it is impossible to harmonize the cases." An examination of the large number of authorities cited by counsel in the argument of this case accentuates the statement of Judge Cooley, and perhaps we shall not be obnoxious to the charge of evading a duty should we decline to enter upon a task which so eminent a jurist declares to be hopeless. We confess ourselves unable to appreciate the argument which would make the language of section 1 of article 20 and section 3 of said article synonymous or expressive of the same intention. If they were, as counsel for defendants contend, intended to mean the same thing, why was not the same language used? We know of no rule of construction, nor has our attention been called to any, that would warrant us in arbitrarily saying that the language used in the two sections was intended to mean the same thing. On the contrary, the reason seems to us to be the other way. We can understand why the makers of the constitution should apply a different and more stringent rule in the adoption of a call for a constitutional convention from what they would in the matter of a mere amendment. It is true, the amendment under consideration is one of vast importance, but so, likewise, are the other amendments submitted at the same time. With the character or importance of the amendment we have nothing to do in this consideration. Was the amendment adopted as required by the terms and provisions of the constitution? To hold that it was not is virtually to say that no amendment of the constitution is practicable. In fact, counsel do not strenuously contend for a construction involving such a conclusion, but rather insist that the words "majority of the electors," in sec-

tion 1, should be construed to mean the same as the words "majority of all the electors voting at such election," in section 3. Even the authorities cited by counsel do not go to such an extent or sustain such a conclusion.

For us to go into an analysis of all the authorities cited and read upon the argument would accomplish nothing. We have carefully examined them all, in the light of the able arguments of counsel, and we find ourselves unable to base our conclusions upon any apparent weight of authority. We must decide this case upon the provisions of our constitution as the same appear to us, and, so doing, we are compelled to say that the construction contended for by the petitioner is the correct one. Experience has shown that it is almost, if not quite, an impossibility to secure an expression from every elector upon any question, and, above all, upon a question of an amendment of the constitution; and it is equally difficult to ascertain the actual number of electors at any given time. To rely upon the vote cast upon some other question at the same election would be entirely unsatisfactory, and such a construction is, we think, at least impliedly negatived by the provisions of section 3. While it is true that some ten thousand or more electors would seem to have been entirely indifferent upon the question of the adoption of this and the other amendments, still all were—must have been—fully advised as to the importance of the questions submitted, and should their indifference be taken as conclusive of their opposition to the amendments? Upon what rule of honesty or righteousness can this be claimed? Is it not more reasonable, as well as more righteous, to say that in a matter about which they manifest such indifference their silence shall be taken as assent? We hold that the amendment under discussion is adopted, and has become a part of the constitution of the state of Idaho.

Sullivan, J., concurs.

MORGAN, C. J., Concurring.—At the last general election in the state of Idaho, which occurred in November, the following question was submitted to the electors of the state, to wit: "Shall section 2 of article 6 of the constitution of the state of Idaho be so amended as to extend to women the equal

right of suffrage?"   The vote of the electors on the proposed
amendment was as follows: For said amendment, twelve thou-
sand one hundred and twenty-six; against said amendment,
six thousand two hundred and eighty-two.   The question sub-
mitted to this court is: "Under the provisions of the constitu-
tion and laws of this state, does this amendment become a part
of the constitution?"   No question of like importance has
been submitted to this court during its existence.   If decided
in the affirmative, it nearly doubles the qualified voters of the
state.   It demands careful investigation and considerate judg-
ment.   It may not be improper, therefore, for me to give my
reasons for concurrence in the judgment of this court.

The question of the policy or practicability of such a radical
change in the fundamental law of the state, in regard to the
qualification of electors, not being an issue in this cause, I
do not propose to discuss.   The proposition that the language
of the constitution with reference to amendments thereto makes
it practically impossible to secure any such I shall also dis-
miss, with the statement that it is not the province nor within
the authority of this court to change or modify its provisions
by judicial decision.

The provisions of our own constitution, and of others sim-
ilar thereto, with reference to the votes necessary to carry any
proposition, may be properly divided into three classes:

First, those which require a majority or two-thirds of all the
votes cast at a general or special election.   Of this class is
section 3 of article 8, regarding county and city indebtedness,
which requires "two-thirds of the qualified electors thereof
voting at an election to be held for that purpose"; that is, two-
thirds of the qualified electors of such county or city.   Also
of the same class is section 1 of article 12, which provides "that
cities and towns may become organized whenever a majority
of the electors at a general election shall so determine."   So
is also section 3 of article 20, which provides that when it
shall be deemed necessary to call a convention to revise or
amend the constitution, which shall be called if a majority of
all the electors voting at said election shall have voted for a
convention, etc.   The language of these sections is clear and
unmistakable.   It needs no construction, and it is only neces-

sary to count the ballots cast at any such election and those voting for the proposition, to ascertain if a majority of all those voting at said election were in favor of the proposition.

Of the class of cases cited in support of this proposition are *St. Joseph Tp. v. Rogers,* 16 Wall. 664, in which case the fourteenth section of the act required only a "majority of the legal voters of such township voting at such election." Of the same tenor is the case of *People v. Warfield,* 20 Ill. 165, in which it is held that the phrase "majority of the voters of a county" is held to mean a majority of those voting at the election. Also, *People v. Garner,* 47 Ill. 246; *People v. Wiant,* 48 Ill. 263; *Cass Co. v. Johnston,* 95 U. S. 360; *State v. Linn Co. Court,* 44 Mo. 504; *State v. Renick,* 37 Mo. 270. From this class of cases we have, perhaps, sufficiently quoted. They differ from the language of our constitution in the particular under discussion in this: that in those cases the law or constitution, as the case may be, positively and in terms requires a majority or two-thirds of all the voters of a particular district or of the state, while our constitution requires a majority of the electors. They are not in point except as giving the reasons for the decisions, which differ somewhat in the different cases. In some cases the reason given is that it is a practical impossibility to ascertain how many legal voters there may be at the time of the election in any given city, county, or state. This reason applies with equal force in the case at bar. There is no necessity for qualifying the word. It is impossible to ascertain how many voters there are in the state at any election. There may be many voters in the state who did not vote for governor, for instance, who did not vote for the presidential electors; and there may have been many voters who voted for attorney general, who voted neither for governor nor presidential electors. The impossibility of the task is apparent at once. But, say the defendants, this is what the constitution requires, and, if it means anything except a majority of the electors voting upon the proposition, the former is what it does mean. However, they say this provision is satisfied by considering the number voting at this election, as the whole number of electors. But we know this is not true, and we

have no warrant for such construction, either in the words of the particular section, the context, or in reason.

The second class of cases are those which require a majority of all the qualified voters of a particular district, county, city, or of the qualified voters of the state. This provision would seem to be too plain to need any construction, or to lead to any difference of opinion. The courts, however, in quite a number of cases, have construed this provision to be satisfied by a majority of the votes cast upon the proposition, while others have construed it according to the strict letter of the constitution or law, as the case may be. Of the latter class are the following cases, cited by counsel for defendants, to wit: *State v. Brassfield,* 67 Mo. 331 (in which case the constitution of Missouri states that a county, city, or town shall not be authorized to become a stockholder, etc., unless two-thirds of the qualified voters of such county, city, or town, etc.) ; *Hawkins v. Board,* 50 Miss. 735. The same provision is in the constitution of Mississippi (article 12, section 14). (*Cocke v. Gooch,* 5 Heisk. 310.) "No part of a county shall be taken off without the consent of two-thirds of the qualified voters in such part." (Tenn. Const., art. 10, sec. 4; *Duke v. Brown,* 96 N. C. 127, 1 S. E. 873.) Same provision in the constitution of North Carolina, article 7, section 7. These decisions are not in point, for the provisions in the various constitutions are all of the second class, as quoted above, and are radically different from our own provision in section 1, article 20. The decisions are instructive, however, as indicating the trend of the opinions held by the various courts of the country upon this subject. Of precisely the same tenor is the constitution of Illinois, as quoted in *People v. Brown,* 11 Ill. 478. Also statute of Illinois, as construed in *Chestnutwood v. Hood,* 68 Ill. 132. It required a "majority of all the legal voters of the county." In *People v. Town of Berkeley,* 102 Cal. 298, 36 Pac. 591, also, the constitution required, in terms, a "majority of the electors voting at a general election." It would manifestly be a bootless, and certainly a very monotonous, undertaking, to follow through all the decisions upon a precisely similar provision of statutes and constitutions. They are substantially the same.

The third class are those which require a majority vote in the affirmative, without the specifications attached to the other classes. In this class the term "plurality of votes" is spoken of as being sufficient or insufficient to adopt a constitutional amendment, both in brief of defendant and in some of the decisions of the courts. The term must have been used inadvertently, as there can be no plurality of votes unless there are three or more candidates, or three ways of voting upon a proposition, as a plurality is the number of votes received by one candidate, in excess of those received by either one of two or more other candidates, and not a majority over both. There can be no plurality where there are but two candidates, or but two ways of voting on a proposition, as upon a constitutional amendment. Section 2 of article 18 of the constitution of Idaho requires two-thirds of the qualified electors of a county, voting on the proposition at a general election in favor of removal, to remove a county seat. Section 3 of article 18, relating to the division of counties, requires a majority of the qualified electors of the territory proposed to be cut off voting on the proposition at a general election to divide a county. Section 3 of article 20 (the next section of the same article), in which is the provision under discussion, requires, in order to call a convention to revise or amend the constitution, that "a majority of all the electors voting at said election shall have voted for such convention, at the next general election." Evidently, it was not the intention of the framers of the constitution to require either one of these conditions to secure an amendment to the constitution. If it had been, they would have so expressed it, and at a time when the different methods of making the constitution were fresh in their minds; but they did not do so, and therefore we must conclude they did not intend it. It may be said, however, that if they had intended that only the votes cast for and against this amendment should be considered, they would have so expressed it, as in section 9 of article 7, in section 1 of article 8, and section 2 of article 10. While they have not used the same words in sections 1 and 2 of article 20, we contend they have substantially said so. Section 2 of article 20 provides that, "if two or more amendments are proposed, they shall be submitted in such manner

that the electors shall vote for or against each of them sep-
arately." Here is a positive direction that the elector shall
vote either for or against the proposition. This is followed
by the statute (1st Sess. Laws, sec. 57, p. 75), providing that,
when the question of a constitutional amendment is to be sub-
mitted to the people, a space of half an inch shall be left op-
posite the words "Yes" and "No," printed upon the ballot,
on which the voter is to make a cross opposite the answer he
desires to make. This was followed by an amended section
57, page 95, of 3d Session Laws of Idaho, in which it is pro-
vided that a circle half an inch in diameter shall be made
opposite the words "Yes" and "No," when the same or a sim-
ilar question is to be submitted, in which the voter is to make
a cross opposite the answer he desires to make.

In Senate Joint Resolution No. 2, approved January 21,
1895, the same legislature provided that the following question
shall be submitted to the electors of the state: "Shall section
2 of article 6 of the constitution be so amended as to extend
to women the equal right of suffrage?" In accordance with
the constitution and the statute, the question was submitted
with the words "Yes" and "No" printed in separate spaces,
with a circle of the required size opposite each, in one of
which each voter who desired to express an opinion on the
question was required to make a cross. Why should the con-
stitution and two different legislatures provide that those who
desired to vote against the proposition should make a cross
opposite the word "No" if these votes were not to be counted,
and why should they be counted if all those who did not vote
at all were to be counted as having voted "No"? There is
no answer. The constitution and the statutes say: "All you
electors who believe that equal right of suffrage should be ex-
tended to women stand up and be counted." Twelve thousand
one hundred and twenty-six voters stand up, and are counted
in the affirmative. The constitution and statutes say with
equal distinctness: "All you qualified electors who believe that
the equal right of suffrage should not be extended to women
stand up and be counted." Six thousand two hundred and
eighty-two stand up and are counted. Eighteen thousand
four hundred and eight votes in all cast upon the question.

But, say the defendants, there were about ten thousand qualified voters in the state who did not vote at all on the question, that should be counted as having voted "No." Why should they be counted in the negative? The constitution does not require it, neither do the statutes. These electors either have no opinion on the subject, or they have none that they care to express. Why should they be counted as having voted in the negative, when they did not vote at all on the subject? There is absolutely no reason, unless the constitution or the statutes require it, and we have seen they do not.

The supreme court of Maryland, in *Walker v. Oswald,* 68 Md. 146, 11 Atl. 711, in construing an act of submission of the question of high license to the voters of a county, wherein it is provided that the act shall take effect if a majority of the voters of said county shall determine by their ballots in its favor, holds that those voters absenting themselves, and those who, being present, abstain from voting, are considered as having acquiesced in the result, and that the measure is adopted if it receives a majority of those voting upon it, even though it fail to receive a majority of the votes cast upon some other subject. (*Cass Co. v. Johnston,* 95 U. S. 369.) The supreme court of Minnesota, in *Dayton v. City of St. Paul,* 22 Minn. 400, construes the following provision of the constitution of the state: "And if it shall appear in a manner provided by law that a majority of the voters present and voting shall have ratified such alterations or amendments, the same shall be valid to all intents and purposes as a part of the constitution." The court declares that "the amendment is ratified if it receives a majority of all the votes upon it, although not a majority of the votes cast at the election." The court says further that "it is the general rule in affairs of government that an election or a voting, whenever called for, is to be determined by the votes of those who vote to fill the office which is to be filled, or for or against the proposition which is to be adopted or rejected, and not by counting on either side those who do not vote at all." And this, in my opinion, is the true rule, as those who express no opinion should not be counted as having expressed any on either side. This is a government by the people who have opinions, and

are willing to express them. Representatives are elected both in Congress and the legislature. Officers are elected, constitutions are framed, and laws enacted, and, of right, ought to be, by these men, and by these only. (See, also, *Taylor v. Taylor,* 10 Minn. 107 (Gil. 81). In *State v. Barnes,* 3 N. Dak. 319, 55 N. W. 883, the court says: "Congress passed an enabling act permitting North Dakota to call a convention, formulate a constitution, submit it to the people, at the same time submit separate articles which required for their adoption a majority of the legal votes cast." The supreme court held that an article which was submitted under this clause, and received a majority of the votes cast upon this question, was adopted, although it did not receive a majority of the votes cast for governor. The language is much stronger than in the case at bar. In *People v. Clute,* 50 N. Y. 461, 10 Am. Rep. 508, the court says: "It is the theory and practice of our government that a minority of the whole body of qualified electors may elect to an office when a majority of that body refuse or decline to vote for anyone for that office. Those who are absent from the polls, in theory and practical result are assumed to assent to the action of those who go to the polls; and those who go to the polls, and do not vote for any candidate for an office [that express no opinion], are bound by the result of the action of those who do; and he who receives the highest number of earnest, valid ballots is the one chosen to the office." The supreme court of Kansas, in *Board v. Winkley,* 29 Kan. 36, says that "at a general election for county or township officers, if a majority of the votes cast are for a bounty for the growing of hedges, the county commissioners shall declare the law to be in full force and effect." Held, that if a majority of the votes cast upon that question are for the proposition, it is legally adopted, notwithstanding it failed to receive a majority of all the votes cast at the election for township officers. In the case of *St. Joseph Tp. v. Rogers, supra,* the thirteenth section of the act then under consideration provided that where elections may have already been held, and a majority of the legal voters of any township or incorporated town were in favor of the proposition, then, etc. It will be noticed that this language is much stronger

than the language under discussion in this cause; as in section 1, article 20 of the constitution, the language is that if a majority of the electors shall ratify the same, it shall become a part of the constitution, etc.; and in the above cause (*St. Joseph Tp. v. Rogers*), the court hold that a majority of the legal voters of the township voting at the election was sufficient to authorize the subscription, although all the voters voting on both sides were together but a minority of all the legal voters of the township. In *People v. Warfield*, 20 Ill. 165, the court further says: "If we go beyond this, and inquire whether there are other voters of the county who were detained from the election by absence or sickness, or voluntarily absented themselves from the polls, we should introduce an interminable inquiry, and invite contest in elections of the most harassing and baneful character, if we did not destroy all the practical benefits of laws passed under those provisions of the constitution."

Here, then, are a number of decisions which declare that, when a constitution or statute declares that a proposition requires a majority or two-thirds of all the voters of a given locality, such provision is satisfied if the proposition receives a majority or two-thirds, as the case may be, of all those voting, taking no account whatever of those, be the number large or small, who fail to vote. It is admitted that if a special election was authorized and held on this question, and it appeared that three thousand votes or a less number were cast for the proposition, and one thousand five hundred against it, it would be legally adopted. This is a distinction without a difference, as in this case the amendment is voted on separately, precisely the same as it would be if no other question was presented, or no officers were to be elected, and the vote taken and reported to the canvassers separately in the same way it would have been had this been the only question before the electors for their decision.

To recapitulate, then: Neither the constitution nor the statutes require either a majority of all the qualified voters of the state, or a majority of all the votes cast at the election. It is clear that the decided weight of authority in such cases is that the proposition is decided in the affirmative if it re-

ceives a majority of all the votes cast upon the question. By many of the courts it is considered that those who absent themselves from the polls, or, being present, do not vote upon the question, assent to the will of the majority who do vote upon the question. By this court it is held that those who have no opinion on the subject, or none that they care to express, not having voted on either side of the question, should not be counted upon either side. As to this question they are not qualified voters.

For the reasons stated, I concur with opinion expressed by Mr. Justice Huston.