HILLSBOROUGH COUNTY, *et al.,* v. TEMPLE TERRACE
ASSETS CO.

149 So. 473.
Division B.
Opinion Filed July 12, 1933.
Rehearing Denied August 2, 1933.

*McKay, Withers & Ramsey,* for Appellants;

*C. W. Lawrence, Jr.,* and *Henry E. Williams,* for Appellee.

BUFORD, J.—The appeal in this case is from an order sustaining demurrer to an amended bill of complaint, the purpose of which amended bill of complaint was to foreclose certain so-called paving certificates which were issued pursuant to the provisions of Chapter 9316, Acts of 1923, as attempted to have been ratified and confirmed by Chapter 10137, Acts of 1925, and Chapter 12207, Acts of 1927. Chapter 9316, *supra,* constitutes whatever basis there is and

whatever legal authority there is, or was, for the board of county commissioners to make the assessment upon which the certificates were issued and to issue the certificates involved here.

In the City of Orlando v. Giles, 51 Fla. 442, 40 Sou. 834, this Court said:

"This Court has held in several cases that the Legislature has power to validate and legalize assessments and levies of. taxes which but for such legalizing action would be irregular and invalid. Smith v. Longe, 20 Fla. 697; City of Jacksonville v. Basnett, *Id.,* 525; Parker v. City of Jacksonville, 37 Fla. 342, text 353, 20 Sou. Rep. 538. In Middleton v. City of St. Augustine, 42 Fla. 287, 29 South Rep. 421, second headnote, the law is thus stated: 'The rule in respect to statutes curing defects in legal proceedings where they amount to mere irregularities, not extending to matters of jurisdiction, and in the absence of constitutional limitations, is that if the thing wanting or which failed to be done and which constitutes the defects in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law.' Potter v. Lainhart, 44 Fla. 647, 33 South. Rep. 251; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 8; Gooley's Const. Lim. (7th ed.) 544; Am. & Eng. Ency. Law (2nd ed.) 945 and notes—946.

"In the case of People v. Goldtree, 44 Cal. 323, the court on page 325 says: 'It will readily be conceded that the Legislature possesses the power to pass curative. Acts, by

which the various acts and proceedings of the officers and Board charged with the levying and assessing of taxes are rendered valid and legal, notwithstanding that irregularities and errors have intervened; and the cases are quite harmonious on the point in other states as well as this. There are, however, defects which are mostly either of a jurisdictional character, or those which become such by reason of some constitutional provision, which are beyond the reach of curative acts. It is impossible to draw a well defined line between the classes of defects which may, and those which may not, be remedied by curative legislation; nor are the authorities on the subject reconcilable. There are defects which, under our Constitution, are incurable by any subsequent legislation—such as an assessment of property situated without the Assessor's county or district; an assessment made by the Board of Equalization; the exemption of particular property or a particular person's property from taxation; the levying of different rates of taxation upon different species of property; and a judgment for the recovery of taxes rendered in a case in which the court had not acquired jurisdiction of the person assessed; and the enumeration might be extended. In those instances the defects consist of a want of power or jurisdiction in the officer or tribunal assuming to act in the matter; and we think it may safely be laid down as a rule in these matters, that whenever the officer had no power or jurisdiction to do the act in question, and not that in its performance he did not pursue the law in respect to the time, mode or some other particular, the act is void, and subsequent legislation cannot cure the defect."

In South Ottawa v. Perkins, 24 Law Ed. 154, Mr. Justice BRADLEY delivering the opinion for the Supreme Court of the United States, said:

"When the cases now under consideration came on for trial in May, 1874, the defendants below offered to prove, by the Journals of each house of the Legislature that there was no entry in the same of the passage by the Senate of the Act of February 18, 1857. The testimony was objected to and ruled out. Substantially the same questions were raised by demurrer to a plea. The ground of this decision seems to have been, that the holder of the bonds was a *bona fide* purchaser of them without notice of any objection to their validity; that the first installment of interest was paid at maturity; and, therefore, that the defendant was estopped from offering any evidence to show that the Act was not passed, the same having been duly published among the printed statutes as a law, and being, therefore, *prima facie* a valid law; in other words, that although the Act might not have been duly passed, the town, under the circumstances of the case, was estopped from denying its passage. We cannot assent to this view. There can be no estoppel in the way of ascertaining the existence of a law. That which purports to be a law of a state is a law or it is not a law, according as the truth of the fact may be, and not according to the shifting circumstances of parties. It would be an intolerable state of things if a document purporting to be an Act of the Legislature could thus be a law in one case and for one party, and not a law in another case and for another party; a law today and not tomorrow; a law in one place and not a law in another in the same State. And whether it be a law or not a law is a judicial question, to be settled and determined by the courts and the judges. The doctrine of estoppel is totally inadmissible in the case. It would be a very unseemly state of things, after the courts of Illinois have determined that a pretended statute of that State is not such, having neither

been constitutionally passed, for the Courts of the United States, with the same evidence before them, to hold otherwise."

Chapter 9316, Acts of 1923, was repealed by Chapter 10139, Acts of 1925, but Section 2 of the Act purported to continue the Act in force in all cases where a petition had already been presented to the board of county commissioners as required by Chapter 9316, and to confirm and validate all proceedings pursuant to such petition. Chapter 12207, Acts of 1927, again purported to repeal Chapter 9316, but to confirm and validate all acts theretofore done under that chapter. But, if Chapter 9316 was never a law then there was never any authority vested in the board of county commissioners to place the burden of the assessment on the property involved and as the power and authority to place this burden on the property was one extraordinary in its nature and entirely beyond the authority of the board of county commissioners unless authorized thereunto by legislative enactment, it was not competent for the Legislature to assume to ratify and confirm such act by a mere reference to the invalid statute and by the use of such general language as was used in these so-called validating acts when done and performed without any authority of law therefor.

So it is that the legislative Act being challenged *in toto,* we must determine whether or. not Chapter 9316 ever became a law and, if we find that it did not, then the certificates here under consideration were without any legal foundation and are void. This Act has been before this Court on former occasions and has been the subject of much discussion.

In this case a question of law has been raised which has not been heretofore presented and which controls the disposition of the case. It is suggested that the Act as filed in the office of the Secretary of State and published never

passed both branches of the Legislature in the manner provided by the Constitution. The recent case of State v. Skaley, filed March 1, 1933, reported 146 Sou. 544, is in point and controlling. In that case we said: "When the validity of a statute is challenged on the ground that it had not been passed by both the Senate and the House of Representatives, the legislative journals afford the controlling evidence."

Chapter 9316 originated in the House of Representatives in the Legislature of 1923 as House Bill No. 142. The title of the Act as introduced was:

"A bill to be entitled an Act to provide for the paving of the public roads outside the corporate limits of municipalities, and for assessing the costs thereof against abutting property owners in counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand, according to the last Federal or State census, and giving the Board of County Commissioners of such counties full power and authority therefor."

The rules were waived and the bill was placed upon its second reading and thereupon it was amended. After amendment it was duly passed and referred to the Committee on Engrossed Bills. The Committee on Engrossed Bills returned it to the House of Representatives under the following title:

"A bill to be entitled An Act to provide for the Paving of the Public Roads Outside the Corporate Limits of Municipalities, and for assessing the costs thereof against abutting property owners in Counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand according to the Federal Census of 1920, and giving the Board of County Commissioners of such counties full power and authority therefor."

This title conforms to the amendments. It was then reported transmitted to the Senate. When it was returned by the Senate it was returned with the following report:

"Hon. L. D. Edge,

Speaker of the House of Representatives,

Sir:

"I am directed by the Senate to inform the House of Representatives that the Senate has passed:

House Bill No. 142:

"A Bill to be entitled An Act to provide for the paving of the public roads outside the corporate limits of municipalities, and for assessing the costs thereof against abutting property owners in counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand according to the last Federal or State census, and giving the Board of County Commissioners of such counties full power and authority. Also

House Bill No. 884:

"A bill to be entitled An Act relating to toll roads and bridges on State Road No. 3, declaring it unlawful for any person, firm or corporation to establish, build or complete any toll road or bridge on said State Road No. 3, or to charge or collect toll for passage over the same; making it unlawful to connect any privately owned toll bridge with said State Road No. 3, when such bridge is built on a detour from said State Road, and prescribing for the violation of the terms thereof.

Very respectfully,

C. A. Finley,

Secretary of the Senate."

Later it was enrolled. The record of enrollment shows that the bill enrolled bore the following title:

"An Act to provide for the paving of the Public Roads outside the corporate limits of municipalities, and for as-

sessing the costs thereof against abutting property owners in counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand according to the Federal census of 1920, and Giving the Board of County Commissioners of such counties full power and authority thereof."

Now, the bill as it appeared in the Senate was entitled:

"A Bill to be entitled An Act to provide for the paving of the public roads outside the corporate limits of municipalities, and for assessing the costs thereof against abutting property owners in counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand, according to the last Federal or State Census, and giving the Board of County Commissioners of such counties full power and authority therefor."

House Bill No. 142 as it passed the Senate, according to the record of the Senate Journal, was entitled:

"A bill to be entitled An Act to provide for the paving of the public roads outside the corporate limits of municipalities and for assessing the cost thereof against abutting property owners in counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand, according to the last Federal or State Census, and giving the Board of County Commissioners of such counties full power and authority therefor."

As it was enrolled by the Joint Committee, to whom it was referred, it was entitled:

"An act to provide for the paving of the Public Roads outside the corporate limits of municipalities, and for assessing the costs thereof against abutting property owners in counties of not less than seventy-five thousand (75,000) nor more than one hundred thousand (100,000) according to the Federal Census of 1920 and giving the Board of

County Commissioners of such counties full power and authority therefor."

And so it is that the respective Journals of the Senate and the House of Representatives show that the Senate passed a bill, the title to which was:

"A bill to be entitled An Act to provide for the paving of the public roads outside the corporate limits of municipalities, and for assessing the cost thereof against abutting property owners in counties of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand, according to the last Federal or State census, and giving the Board of County Commissioners of such counties full power and authority therefor."

And the House of Representatives passed a bill the title to which was:

. "A bill to be entitled An Act to provide for the paving of the public roads outside the corporate limits of municipalities, and for assessing the costs thereof against abutting property owners of not less than seventy-five (75,000) thousand nor more than one hundred (100,000) thousand according to the Federal Census of 1920, and giving the Board of County Commissioners of such counties full power and authority therefor."

Between these two titles there existed a material difference. The Act as passed by the House applied only to counties having a population (if we may interpolate the word *population*) of not less than seventy-five thousand (75,000) and not more than one hundred thousand (100,000) according to the Federal Census of 1920. This could never have included more than one county, to-wit: Hillsborough County, and therefore, the bill was a local bill applying to the County of Hillsborough only just as certainly as if the name County of Hillsborough had been

included instead of the phrase as to population according to the census of 1920. But, the bill as passed by the Senate would apply to any county in which the population should ever become more than 75,000 and less than 100,000, according to any State or Federal census. In other words, one was strictly a local law, while the other was potentially a general law.

The bill as passed by the House and approved by the Governor and published as a statute according to the Senate Journal was never passed by that body and, therefore, never became a law. See State v. Skaley, *supra*.

Having reached the conclusion enunciated, it is not necessary to discuss other questions presented on this appeal.

For the reasons stated, the order appealed from should be affirmed, and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.