**VOLUSIA COUNTY, a Political subdivision of the State of Florida, and the Members of the Board of County Commissioners of Said County, v. DEL-AIR CORPORATION.**

25 So. (2nd) 804                           January Term, 1946
April 2, 1946                                    Division B
Rehearing denied May 2, 1946

*Charles W. Luther,* for appellants.
*Mahlon S. McGregor,* for appellee.
*John L. Graham* as amicus curiae.

THOMAS, J.:

The backdrop of the present controversy is the decision of this court in the case of Gessner et al., v. Del-Air Corporation, 154 Fla. 829, 17 So. (2nd) 522, that the county could not sell real property then owned and theretofore used by it, for the simple reason that it had no statutory authority to do so.

From the allegations of the bill for declaratory decree, now under study, (authorized by Chapter 21820, Laws of Florida, Acts of 1943, Section 87.01 et seq., Florida Statutes, 1941, and F.S.A.) we shall give the status of the transaction between the Del-Air Corporation and the Board of County Commissioners of Volusia County at the time of the decision in Gessner v. Del-Air Corporation, supra; then chronicle from the averments of the pleading what has transpired since, in order that we may determine whether the agreement or arrangement to sell certain property of the county has now become effectual.

At the time of the decision the corporation had for about three years been operating factories on the land in question, leased to it by the county. In 1943 the county commissioners and appellee began negotiations for the sale and purchase of the property, which resulted in the adoption by the former, 18 November 1943, of a resolution approving sale to the latter for the sum of $13,000, $2,000 in cash and the balance in monthly installments of $1,000 from 30 November 1943 to 30 September 1944, both inclusive, and authorizing the chairman and clerk to execute and deliver a deed "providing for a vendor's lien to secure the payment of the balance of the purchase price . . . " This deed was executed—this fact is in dispute, as we shall presently see—the day of the passage of the resolution, and the initial cash payment was then made. Immediately thereafter the authority of the board to sell the property was challenged, and as a consequence the suit heretofore determined was instituted. Our opinion in that appeal, to the effect that power of the board to make the conveyance was wanting, was filed in June, 1944, and the following October the board sought the advice of its attorney with reference to its "capacity to complete the . . . sale." Counsel advised that the board could not, until so empowered by the

Legislature, consummate the sale of the property. It is an interesting commentary—we are still referring to the bill of complaint—that the day this advice was given, prompted doubtless by our decision, the president of Del-Air Corporation was assured by the board that there was good reason to believe legislative authority would be granted and was told by that body that his corporation could continue to occupy the premises under the then lease of the property and that rental paid in the interim would be applied on the unpaid purchase price when the sale was concluded. It was asserted in the pleading that Chapters 23593 and 23594, Laws of Florida, Special Acts of 1945, vested in appellants authority to "complete the sale." So much for the bill.

Going directly and immediately to the salient features of the answer, we find there express denial that the board actually executed the deed and the assertion that, although such an instrument was drafted and signed by the chairman and clerk, it was never acknowledged, never witnessed, and never sealed. Adverting for the moment to the bill, it should be said that from a copy of the proposed deed attached as an exhibit to this pleading it appears that these allegations of the defendants with reference to lack of witnesses, acknowledgement, and seal are true. The answer further denied that there was any ratification by the legislature in 1945, and contained the allegation that the board of county commissioners had published notice of the receipts of bids for the purchase of the property. The significance of this allegation will appear when we give a resume of the acts of the legislature relied upon by the appellees. In conclusion the respondents, appellants here, also sought a declaratory decree under Chapter 21820, supra.

So at the time of the interruption of the transaction between appellants and appellee when the suit of Gessner v. Del-Air Corporation was begun, the corporation had paid to the county $2,000; vendor and vendee had agreed upon the terms for lien for the remainder of the purchase price; the deed was signed by the chairman and clerk of the board of county commissioners, but not witnessed, sealed, or acknowledged. The deal has remained in this status until now, and meanwhile the

legislature enacted Chapter 23593 and 23594, Laws of Florida, Special Acts of 1945. The question, then, is whether legislative authority, lacking at the time of the payment of the $2,000 and the signing of the instrument by the chairman and clerk, was supplied by these enactments.

The last of these, as simple in its terms as it is indefinite, contains the blanket provision that "all acts and proceedings of the Board of County Commissioners of the County of Volusia . . . and the Clerk of said Board [theretofore] done and taken in connection with the affairs of said County be . . . ratified, confirmed and validated in all respects." Taken literally it would carry legislative approval of every act of these officers without limitation or qualification. It is most general in its terms, and contains no reference to specific doings or proceedings anent the business of the county. It would require a construction of greater liberality than we are willing to adopt to hold that in language so broad an act of the county commissioners, void from absolute want of power, could be thus vivified. We apprehend that a ruling on our part that a law framed in such general and indefinite language operating retrospectively, as curative measures do, could clothe a board with power it theretofore had lacked, would commit us to the approval of a course that might often in the future have dangerous if not disastrous consequences.

Neither in the title of the law nor its body is there the slightest reference to the transaction between the board and Del-Air Corporation. Whether such measure may in one fell swoop legalize all actions of the board without limitation as to time, nature, or extent we do not decide, but we are convinced that there cannot be read into its provisions confirmation of the private sale of land negotiated when there was no power in the body to carry out the contract.

This view seems in accord with what was written by Mr. Justice BUFORD in Hillsborough County et al. v. Temple Terrace Assets Co., Inc., 111 Fla. 368, 149 So. 473.

We are influenced further in reaching the conclusion by the general plan that the transactions involving public property or public funds competitive bids are required, for the obvious purpose of securing the greatest advantage to the

whole people, a principle recognized by the legislature in the enactment of the other act. Chapter 23594, which we shall now discuss.

Omitting the parts inapplicable to the situation with which we are dealing, it authorizes the board of commissioners of Volusia County to "sell and convey property, real . . . whenever such Board shall determine that it is to the best interest of the County so to do . . . , provided that no sale of real property shall be made unless notice thereof shall be advertised . . . calling for bids for the purchase of real property so advertised to be sold, and in each case the bid of the highest bidder . . . shall be accepted . . . " Private sales are authorized only to the United States of America and any of its departments or agencies, the State of Florida and any of its political subdivisions, any municipality of the state, and any corporation or organization not for profit, the property of which is exempt under the Constitution and laws of the State of Florida. Section 6 of the act follows: "All conveyances of real and personal property heretofore made by Volusia County, Florida, or its Board of County Commissioners are hereby ratified and confirmed in all respects."

We now resort to a process of elimination to determine just what portions of this act may be said to authorize the consummation of the proposed sale from the board of county commissioners to Del-Air Corporation. Clearly the section with reference to sales having an inception after the passage of the act would not apply because, for them to be legal, there would have to be advertisements for bids. Parenthetically, this accounts for the averment in the answer that the board of county commissioners had already published a notice calling for bids for the purchase of the property.

It is plain that the appellee is not included in the class of those who may purchase property of the county at private sale. So it seems that any authority to close the deal must be found in Section 6 ratifying "conveyances . . . made" before the passage of the act. Of course benefit to the corporation from this section could result only from a decision by the court that the transaction we have described amount to a conveyance; that a conveyance had, in effect, been accomplished.

To reach such a conclusion many obstacles are encountered. We have seen that although appellee paid a part of the consideration, the execution of the deed it was to receive has never been completed. This indicates that negotiations had not progressed to the point where it could be said that the conveyance was *made,* which we understand to mean, when so used, *completed.* A convincing circumstance that such was not the case is the position taken by the appellee itself in the case of Gessner v. Del-Air Corporation.

In its answer Del-Air Corporation then alleged that "the petitioners [board of county commissioners] have alleged . . . that there is some doubt as to the right and authority of the petitioners exercising the powers therein referred to [sale of property and execution of deed] and for that reason, this respondent is *willing that this* court enter a declaratory decree adjudicating the question involved as this respondent [Del-Air Corporation] *does not wish to complete the negotiations for the purchase of said property nor enter into a contract to purchase the same or pay the purchase price therefor* [sic] *or any part thereof unless the question is definitely determined* . . . " (Italics supplied.)

The conclusion is inescapable from this language selected by the Del-Air Corporation that it did not consider the deal closed; did not even wish to further negotiations or enter a contract, with the authority of the commissioners in doubt, a doubt later by judicial determination resolved against the right to exercise the authority.

We repeat our comment with reference to the effect of 23594, that is that were this section to be interpreted as approval of a private sale it would be wholly in discord with the rest of that statute requiring sale of property of the county, after advertisement, to the highest bidder.

Another doubt which would be cast on the validity of Section 6 of the act were the transaction, which appellee terms a "conveyance made," to be therefore considered merely a defective deed, is the provision of Section 20, Article III, of the Constitution that "The Legislature shall not pass special or local laws . . . giving effect to informal or invalid deeds . . . " We shall not elaborate on the point because we

think the clause inapplicable to the facts of this case, no deed having been executed, no conveyance having actually been made.

Reversed.

CHAPMAN, C. J., BROWN and SEBRING, JJ., concur.