BENJAMIN F. MOORE, APPELLANT, v. ROBERT F. NEECE ET AL., APPELLEES.

FILED JANUARY 23, 1908. No. 15,030.

Statutes: VALIDITY. When the legislative journals show affirmatively that a bill which has passed one house has been amended in the other before final passage thereby, and that such amendments have not been concurred in by the house in which the measure originated, and also show affirmatively that such amendments

have not been receded from with the assent of a majority of all the members elected to the house by which they were made, the bill is void as a measure of legislation.

APPEAL from the district court for Sioux county: WILLIAM H. WESTOVER, JUDGE. *Reversed.*

*Allen G. Fisher,* for appellant.

*R. L. Wilhite* and *M. F. Harrington, contra.*

AMES, C.

In January, 1903, defendants Robert F. and Margaret Neece, for the purpose of securing payment of part of the purchase price of a tract of land conveyed to the latter, executed and delivered to the vendor, the defendant Allison, their negotiable promissory note, payable four years after date, with interest at the rate of 7 per cent. per annum payable annually, and also executed and delivered a mortgage upon the land conditioned for the payment of the note, and containing a covenant to the effect that upon default in payment of any instalment of interest the holder of the note might declare the whole amount of principal and accrued interest due and payable, and enforce the mortgage by foreclosure accordingly. In July of the same year Allison, the payee, for a valuable consideration indorsed and delivered the note and assigned the mortgage to the plaintiff, who has since remained and now is the owner thereof. In May, 1904, default having occurred in the payment of the first instalment of interest reserved by the note, the plaintiff exercised the option expressed in the covenant above mentioned, and began an action for a foreclosure of the mortgage, making parties thereto both the defendants Neece, and their grantees of the premises, and Allison the indorser. This action proceeded regularly to decree, sale and confirmation. At the time of the confirmation the amount of the proceeds of the sale applicable to the payment of the mortgage debt was deficient of the amount of the latter, with accrued interest,

in the sum of $10,192.73, and the court at that time made and entered, on the application of the plaintiff, an order that he be permitted to withdraw the note from the files, "and that the plaintiff herein, Benjamin F. Moore, be and is hereby granted and adjudged the right and authority to commence an original action on said note, so withdrawn from the files of this court, against Robert F. Neece and Margaret Neece, as makers thereof, and Peter Allison, as indorser thereon, for the recovery of any deficiency or residue that may remain unpaid on said note after the proper application of the proceeds of said sale of real estate thereon." This action was brought pursuant to the foregoing order, which is recited in the petition. There is no dispute about the facts. The defendant Allison filed an answer, but it differs from the petition only in the respect that it recites the foregoing facts somewhat more fully than does the latter. The defendants Neece filed separate answers, each to the same effect as the foregoing. Upon a trial before the court there was a judgment for the defendants, from which the plaintiff appealed.

The litigation involves two questions with respect to chapter 95, laws 1897, entitled "An act to repeal sections 847 and 849 of the code of civil procedure relating to deficiency judgments, and to amend section 848 of said code of civil procedure by striking out the last five words of said section, namely: 'unless authorized by the court.'" The first of these questions relates to the validity of the said chapter, having reference to its form and the manner of its passage, and the second relates to its interpretation and effect, if it is valid. The former of these questions has given rise to several inquiries, the first of which in natural order seems to be whether the measure passed the two houses in such manner that it can be affirmed that in its present form it expresses the joint will of a constitutional majority of each. Under the rules adopted by former decisions of this court this question can be determined only by an examination of the journals of the two houses.

The history of the measure, as disclosed by the record, is as follows: The bill was introduced in the senate and read a first time as senate file No. 108 on the 20th day of January, 1897. On subsequent days of the session it went duly and regularly through the usual and necessary stages of consideration in that body, and on the 19th day of March was read a third time and put upon its passage and passed by an affirmative vote of 21 senators. On the following day it was reported to and read a first time in the house of representatives, and on the next day read a second time and referred to general file. On March 25, the committee of the whole house reported the bill back with mention of amendment, but with a recommendation that it be indefinitely postponed. Thereupon a motion was made that the report of the committee be not concurred in, "but that the original bill as printed and without any amendments be ordered to a third reading." A point of order was made against this motion "that a motion to amend a bill or strike out a portion of such bill, when the report of the committee of the whole was before the house, was not in order." The point of order was overruled, and the motion, being put, was defeated by a vote of 47 to 46; 6 members being absent or not voting. On March 31 the bill was read a third time, and the speaker announced that, it "having been read at large on three different days, and the same with all its amendments having been printed, the question is: 'Shall the bill pass?'" There were 58 votes in the affirmative and 24 in the negative, and 17 members were absent or not voting, and the measure was duly declared passed. On the 1st day of April the senate voted to nonconcur "in the house amendments to senate file 108," and on the same day this action was by the secretary of that body reported to the house. On the next day, April 2, a motion to recede from the house amendments received 43 affirmative and 39 negative votes; 17 members being absent or not voting. The motion was declared carried, and so reported to the senate by the clerk of the house. The bill with the customary certifi-

cates was then signed by the presiding officers of the two houses and presented to the governor for his consideration.

This record can leave no reasonable doubt in any mind familiar with it that the bill was amended by the house after its passage by the senate and that the amendments were not concurred in by the latter body. What was the number or nature of those amendments we are without sufficient knowledge upon which to base even a conjecture. But we do know that the number of absentees, both on the vote on the final passage in the house and on the vote therein to recede from the amendments, was the same, namely, 17. And we know, also, that with the exception of 5 members the absentees on both occasions were the same persons, and that on the passage of the bill 4 of these 5 persons voted in the affirmative and 1 in the negative. Now, if we suppose these 5 persons to have been present when the vote to recede was taken, and to have voted to the same practical intent and purpose to which they did vote on the final passage, the number of affirmative votes on the motion to recede would have been increased to 47 and the negative to 40. It is a demonstration, therefore, that 11 members who voted "aye" on the final passage voted "nay" on the motion to recede. The presumption is, therefore, well-nigh irresistible that by these 11 members the amendments were regarded as of so great importance as to be decisive of their votes on both occasions, and, if the latter had been absent or cast in the negative when the bill was upon final passage, that measure would have received but 47 affirmative votes and would have been defeated. It is not unfair to assume that the 4 absentees on the last occasion, who voted "aye" on final passage, would, if they had been present, have swelled the negative vote to 43, and the motion to recede would have failed for want of a majority of the votes cast thereon. This last assumption is strengthened by the fact that the motion to order the bill to a third reading without amendment was lost by a vote of 51 to 32, and that of those then voting with the majority 9 were members who were absent

when the vote was taken on the motion to recede. Presumably, therefore, if all these 9 persons had been present on the latter occasion the negative vote would have been increased from 39 to 48. Of the remaining 8 members, 3 were absent on both occasions. If the still 5 remaining absentees had been present and had voted for the motion to recede, the total affirmative vote would have been but 48 and the motion would still have been lost for want of a majority voting thereon.

The governor did not exercise his power to veto, but neither did he approve the bill, but he transmitted it to the secretary of state, by whom it was certified and published in the printed volume of laws of the session. But it is clear to a demonstration that the measure, as so filed and published, was never assented to by a majority of the members elect of both houses of the legislature, and, in our opinion, the inevitable consequence is that it has never become a law. To put the matter briefly: It is clear from the record, beyond doubt or cavil, that a majority of all the members elected to the house expressly refused to pass the bill without the amendments, and the record shows with equal conclusiveness that such a majority never retracted that refusal. In *Hull v. Miller*, 4 Neb. 503, it was held, in effect, that, when the journal of either house recites that amendments made by the other have been submitted to a vote and have been concurred in, the presumption is that the recital is true and the requisite vote has been cast in their favor, and that it is not necessary for that purpose that the roll of members shall be called and their votes entered upon the record; but this is not equivalent to holding that, when the journal discloses that the roll was called and the vote was recorded, and the evidence thus furnished is conclusive that a majority of the members elect did not assent, the concurrence of a majority of those present and voting is sufficient for the adoption of the amendments. Such a rule would violate the spirit, if not the letter, of the constitution. Provisions of the greatest importance and

of far-reaching effect are frequently brought into legislative bills by amendment. A majority of the members elected to each house constitute a quorum for the transaction of business. If the contention of counsel for appellees is upheld, then the affirmative vote of 26 members of the house or of 9 in the senate is sufficient for the adoption of such amendments, although the journals show affirmatively that 25 members in one case and 8 senators in the other are present and vote in the negative. If this practice can be upheld as valid legislation, the requirement of section 10, art. III of the constitution, that "no bill shall be passed unless by assent of a majority of all the members elected," etc., may easily be evaded and will soon become of little practical force or effect. Of course, the same considerations prevail, with even greater reason, with respect to the vote requisite for recession from amendments after they have been formally incorporated into a bill and have been solemnly adopted by a vote on final passage. To permit less than a constitutional majority afterwards to eliminate them from the bill by a vote of recession would be to defeat the manifest object of the constitutional provision, which is to require the concurrence of a prescribed majority of each house in every measure of legislation.

The conclusion thus reached disposes of this appeal, and dispenses with a decision of the remaining questions raised and argued by counsel, none of which is likely to recur in this case.

We recommend that the judgment of the district court be reversed, and a new trial granted.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and a new trial granted.

REVERSED.