FILED
June 29, 2015
Third Court of Appeals
Jeffrey D. Kyle
Clerk

# No. 03-14-00805-CV

## *IN THE THIRD COURT OF APPEALS*
### *at Austin, Texas*

---

**DEVVY KIDD,**

Appellant,

v.

**CARLOS CASCOS,**

Texas Secretary of State,

Appellee.

---

On Appeal from the
53rd District Court of Travis County

---

**BRIEF OF APPELLANT
DEVVY KIDD**

---

DEVVY KIDD
Appellant *Pro se*
P.O. Box 1102
Big Spring, Texas 79721
432-264-7869

ORAL ARGUMENT NOT REQUESTED

RECEIVED
JUN 2 9 2015
THIRD COURT OF APPEALS
JEFFREY D. KYLE

# IDENTITY OF PARTIES AND COUNSEL

**Plaintiff-Appellant:**
Devvy Kidd
P.O. Box 1102
Big Spring, Texas 79721

**Counsel:**
Devvy Kidd, *pro se*

**The State Defendant-Appellant:**
Carlos Cascos, Texas Secretary of State

**Defense Trial Counsel:**
Adam N. Bitter
Attorney General's Office
P.O. Box 12548
Austin, Texas 78711-2548

**Appellate Counsel:**
Adam N. Bitter

# TABLE OF CONTENTS

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

# INDEX OF AUTHORITIES

Cases:                                                                    Page:

*Alabama v. Manley*,
441 So. 2d 864 (Ala. 1983)...................................... 14

*Ashcroft v. Blunt*,
696 S.W.2d 329 (Mo. banc 1985)............................... 20

*Ass'n of Texas Prof. Educators v. Kirby*,
788 S.W.2d 827 (Tex. 1990)................................... 9, 29

*Bennett v. Jackson*,
186 Ind. 533, 116 N.E. 921 (1917)............................. 15

*Bd. of Rev. of Jefferson County v. Crow*,
141 Ala. 126, 37 So. 469 (Ala. 1904)........................... 21

*Carnegie Instit. of Medical Lab. Technique, Inc. v. App. Authority for Schools for Training Medical Lab. Technologists*, 213 N.E.2d 225 (Mass. 1965).......... 22

*Bott v. Wurts*,
63 N.J.L. 289, 43 A. 744 (1899)............................... 17

*City of Chicago v. Reeves*,
220 Ill. 274, 77 N.E. 237 (1906)............................... 15

*Collier v. Frierson*,
24 Ala. 100 (1854)............................................ 14

*Collins v. Walker*,
329 F.2d 100 (5th Cir. 1964).................................. 27

*County Comm. of Washington County v. Baker*,
141 Md. 623, 119 A. 461 (1922)............................... 22

*Crawford v. Gilchrist*,
64 Fla. 41, 59 So. 963 (1912)................................. 15

iii

*Cudihee v. Phelps,*
76 Wash. 314, 136 P. 367 (1913). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Durfee v. Harper,*
22 Mon. 354, 56 P. 582 (1899). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ellingham v. Dye,*
178 Ind. 336, 99 N.E. 1 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Field v. Clark,*
143 U.S. 649, 12 S. Ct. 495 (1892). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fuqua v. Davidson County,*
189 Tenn. 645, 227 S.W. 2d 12 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gabbert v. Chicago, R. I. and P. Ry. Co.,*
171 Mo. 84, 70 S.W. 891 (1902). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gardner v. Collector,*
73 U.S. (6 Wall.) 499 (1868). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Graham v. Jones,*
198 La. 507, 3 So. 2d 761 (1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Green v. State Board of Canvassers,*
5 Idaho 130, 47 P. 259 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gottstein v. Lister,*
88 Wash. 462, 153 P. 595 (1915). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hammond v. Clark,*
136 Ga. 313, 71 S.E. 479 (1911). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hammontree v. Phelps,*
605 F.2d 1371 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Heiner v. Donnan,*
285 U.S. 312, 52 S.Ct. 358 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hillsb. County v. Temple Ter. Assets Co.,*
111 Fla. 368, 149 So. 473 (1933). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Denny,*
156 Ind. 104, 59 N.E. 359 (1901). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Kornbluh,*
134 N.J.L. 529, 49 A. 2d 255 (1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Jaegle,*
83 N.J.L. 313, 85 A. 214 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re McConaughy,*
106 Minn. 392, 119 N.W. 408 (1909). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kadderly v. Portland,*
44 Ore. 118, 74 P. 710 (1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*King Lumber Company v. Crow,*
155 Ala. 504, 46 So. 646 (1908). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Knight v. Shelton,*
134 F. 423 (E.D. Ark. 1905). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Koehler v. Hill,*
60 Iowa 543, 14 N.W. 738 (1883). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Livermore v. Waite,*
102 Cal. 113, 36 P. 424 (1894). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lone Star College System v. Immigration Reform Coalition of Texas (IRCOT),*
418 S.W.3d 263 (Tex.App.-Houston [14th Dist.] 2013). . . . . . . . . . . . . . . . 11, 12

*Lovett v. Ferguson,*
10 S.D. 44, 71 N.W. 765 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mayor and Aldermen of West End v. Simmons,*
165 Ala. 359, 51 So. 638 (1910). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*McBee v. Brady,*
51 Idaho 761, 100 P. 97 (1909)...................................15

*McCreary v. Speer,*
156 Ky. 783, 162 S.W. 99 (1914).................................15

*McDougal v. Davis,*
201 Ark. 1185, 143 S.W. 2d 571 (1940)...........................21

*Medlin v. County of Henrico Police,*
34 Va. Ct. App. 396, 542 S.E.2d 33 (2001). ....................23

*Moog v. Randolph,*
77 Ala. 597 (1884)..............................................20

*Moore v. Neece,*
80 Neb. 600, 114 N.W. 767 (1908)................................22

*Oakland Paving Co. v. Hilton,*
69 Cal. 479, 11 P. 3 (1886). ...................................15

*Oregon Business and Tax Research, Inc. v. Farrell,*
176 Ore. 532, 159 P. 2d 822 (1945). ...........................22

*People v. Curry,*
130 Cal. 82, 62 P. 516 (1900)...................................15

*People v. Lueders,*
283 Ill. 287, 119 N.E. 339 (1918)...............................22

*People v. Stevenson,*
281 Ill. 17, 117 N.E. 747 (1917)................................15

*Rice v. Palmer,*
78 Ark. 432, 96 S.W. 396 (1906). ..............................15

*Rich v. Board of State Canvassers,*
100 Mich. 453, 59 N.W. 181 (1894)...............................16

*Rode v. Phelps,*
80 Mich. 598, 45 N.W. 493 (1890)....................................22

*Rogers v. State,*
72 Ark. 565, 82 S.W. 169 (1904). ...................................21

*State v. Babcock,*
17 Neb. 188, 22 N.W. 372 (1885)....................................16

*State v. Brookhart,*
113 Iowa 250, 84 N.W. 1064 (1901)...................................15

*State v. City of Sanford,*
113 Fla. 750, 152 So. 193 (1934). ...................................22

*State v. Cunningham,*
81 Wis. 440, 51 N.W. 724 (1892).....................................17

*State v. Davis,*
20 Nev. 220, 19 P. 894 (1888). .....................................16

*State v. Deal,*
24 Fla. 293, 4 So. 899 (1888). .....................................21

*State v. Fridley,*
126 Ariz. 419, 616 P.2d 94 (Ariz.App. Div. 1 1980). .....................20

*State v. Foraker,*
46 Ohio St. 677, 23 N.E. 491 (1890)..................................17

*State v. Laiche,*
105 La. 84, 29 So. 700 (1901).......................................22

*State v. Marcus,*
160 Wis. 354, 152 N.W. 419 (1915)...................................17

*State v. McClelland,*
18 Neb. 236, 25 N.W. 77 (1885)......................................22

*State v. Powell,*
77 Miss. 543, 27 So. 927 (1900)................................ 16

*State v. Sessions,*
87 Kan. 497, 124 P. 403 (1912). ............................. 15

*State v. Skaley,*
108 Fla. 506, 146 So. 544 (1933). ........................... 22

*State v. State Board of Equalization,*
107 Okl. 118, 230 P. 743 (1924)............................ 17

*State v. Swan,*
7 Wyo. 166, 51 P. 209 (1897)................................ 22

*State v. Swift,*
69 Ind. 505 (1880)........................................... 15

*State v. Tooker,*
15 Mon. 8, 37 P. 840 (1894). ................................ 16

*State v. Tufly,*
19 Nev. 391, 12 P. 835 (1887). ............................. 16

*State v. Wendler,*
94 Wis. 369, 68 N.W. 759 (1896)........................... 22

*State v. Wis. State Bd. of Medical Examiners,*
172 Wis. 317, 177 N.W. 910 (1920)......................... 22

*Tot v. United States,*
319 U.S. 463, 63 S.Ct. 1241 (1943). ......................... 27

*Town of South Ottawa v. Perkins,*
94 U.S. 260 (1877). ......................................... 13

*United States v. Belgrave,*
484 F.2d 915 (3rd Cir. 1973).................................. 27

*United States v. Bowen*,
414 F.2d 1268 (3rd Cir. 1969)................................... 25

*United States v. Lake*,
482 F.2d 146 (9th Cir. 1973)................................... 27

*United States v. Perry*,
474 F.2d 983 (10th Cir. 1973)................................. 26

*United States v. Simmons*,
476 F.2d 33 (9th Cir. 1973)................................... 26

*Volusia County v. State*,
98 Fla. 1166, 125 So. 375 (1929). ........................... 21

*Watts v. Town of Homer*,
207 So.2d 844 (La.App. 2 Cir. 1968). ....................... 20

*Weis v. Ashley*,
59 Neb. 494, 81 N.W. 318 (1899)............................ 22

*Wooley v. Schaffer*,
447 S.W.3d 71 (Tex. App. —Houston 2014)................. 9

*Yancy v. Waddell*,
139 Ala. 524, 36 So. 733 (1904)............................. 21

Constitutional Provisions and Statutes:

U.S. Constitution, Art. I, §3. ................................ 2

U.S. Constitution, Art. V..................................... 2

U.S. Constitution, Seventeenth Amendment................... 8, 23

Revised Statutes §205...................................... 3, 23, 24, 28

## STATEMENT OF THE CASE

On September 22, 2014, I filed in the trial court a complaint seeking a Writ of Prohibition and Injunction (C.R. 3-18). That lawsuit was premised on the contention that the Seventeenth Amendment to the U.S. Constitution, which provides for the popular election of Senators, had failed to be lawfully ratified, and by means of my complaint, I sought an injunction against the Secretary of State's efforts to sponsor and conduct elections for Senators. On October 31, 2014, the Defendant/Appellee Secretary of State filed a motion to dismiss my complaint (C.R. 97-113), and on December 4, 2014, the trial court entered an order dismissing my complaint (C.R. 137). Notice of appeal was timely filed on December 19, 2014 (C.R. 140).

## STATEMENT REGARDING ORAL ARGUMENT

I believe that the issue presented here is more than capable of decision without oral argument and therefor I do not request such arguments.

## ISSUE PRESENTED

ISSUE: Did the trial court err in dismissing my complaint seeking a Writ of Prohibition and Injunction?

## STATEMENT OF THE FACTS

The original United States Constitution provided that United States Senators shall be appointed by the various state legislatures: "The Senate of the United States shall be composed of two Senators from each state, chosen by the legislature thereof,

1

for six years; and each Senator shall have one vote." See U.S. Constitution, Art. I, §3, cl. 1. The Seventeenth Amendment provided for the popular election of senators rather than appointment by state legislatures.

In June, 1911, the U.S. Senate proposed this amendment, and the House concurred in May, 1912. That proposed amendment read as follows:

> "The Senate of the United States shall be composed of two Senators from each State, elected by the people thereof, for six years; and each Senator shall have one vote. The electors in each State shall have the qualifications requisite for electors of the most numerous branch of the State legislatures.

> "When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: *Provided*, That the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.

> "This amendment shall not be so construed as to affect the election or term of any Senator chosen before it becomes valid as part of the Constitution ."[1]

Of the two separate methods for amendment as set forth in Art. V of the U.S. Constitution, Congress chose to have the state legislatures ratify this proposed amendment:

> "The Congress, whenever two thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the legislatures of two thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three fourths of the several states, or by conventions in three fourths thereof, as the

---

[1] For promulgation of this amendment, see 37 Stat. 646.

2

one or the other mode of ratification may be proposed by the Congress".

There were 48 States in this American Union in 1913, and thus it took 36 States to ratify this amendment to the U.S. Constitution.

At that time, if a state legislature ratified an amendment, it notified the U.S. Secretary of State of its ratification. If "three fourths" of the state legislatures concurred with the amendment as Congress proposed, the Secretary of State would issue a proclamation of ratification pursuant to Revised Statutes §205, which provided as follows:

> "Whenever official notice is received at the Department of State that any amendment proposed to the Constitution of the United States has been adopted, according to the provisions of the Constitution, the Secretary of State shall forthwith cause the amendment to be published in the newspapers authorized to promulgate the laws, with his certificate, specifying the States by which the same may have been adopted, and that the same has become valid, to all intents and purposes, as a part of the Constitution of the United States."[2]

On May 31, 1913, Secretary of State William Jennings Bryan proclaimed that 36 States had ratified the Seventeen Amendment, and it was thus a part of the U.S. Constitution. See 38 Stat. 2049. Secretary Bryan listed the States of California and Wisconsin as two States that had ratified this amendment. Ever since that proclamation, U.S. Senators have been chosen via the election process it provides.

But the U.S. Constitution allows an amendment to take effect only "when

---

[2] The current law in this respect is codified at 1 U.S.C. §106b.

3

ratified by the legislatures of three fourths of the several states", and researchers have investigated this process and determined that several States did not legally ratify the amendment as required by the U.S. Constitution. As alleged in my complaint, the Wisconsin legislature amended the proposed amendment in material respects, and California never voted on the proposed amendment, yet these States were claimed by Secretary Bryan as having ratified it.

As proof of what the Wisconsin legislature did regarding this proposal, I attached Exhibit 4 (C.R. 65-66) to my complaint and it plainly shows that the legislature of Wisconsin amended the proposed amendment, a power which it lacked.

In a letter dated May 20, 1912, the Executive Chamber of the Governor advised the Secretary of State about the receipt of the Seventeenth Amendment Resolution from Congress. However, in a second letter from the Acting U.S. Secretary of State to the Governor of Wisconsin dated a full year later, it was noted that:

> "In paragraph 4 of the Joint Resolution passed by the Wisconsin Legislature, the following clause, which does not appear in the Joint Resolution passed by Congress, is inserted after the word 'vacancies' and before the words 'the following'".

However, the problem was far worse. Documents from the National Archives show that the Wisconsin State Assembly and Senate adopted the following text for the amendment, along with incorrect punctuation:

> "The senate of the United States shall be composed of two senators from each state, elected by the people thereof, for six years; and each senator shall make

4

temporary appointments until the people fill the vacancies by election as the legislature may direct.

"This amendment shall not be so construed as to affect the election or term of any senator chosen before it becomes valid as part of the constitution."

Not only did Wisconsin change the first paragraph, its legislature decided to completely eliminate the second one. A state cannot add text to a constitutional amendment nor can it simply decide to take out words, sentences or complete paragraphs in a proposed constitutional amendment. Absolute conformity must be adhered to or else possibly dozens of variations of an amendment to the U.S. Constitution would result, causing endless legal problems.

The letter mentioned above closed with a request by the Acting U.S. Secretary of State that the governor notify him as to the intention of the legislature regarding ratification of the proposed amendment. After due diligence and research, no documents can be found where Wisconsin ever corrected its invalid ratification.

While Secretary Bryan listed California as one of the States which ratified that amendment, in fact, it did not. The California State Legislature never voted on it, either the Assembly or Senate.

Exhibit 5 (C.R. 67-86) to my complaint contains a number of certified documents from the Secretary of State for the State of California, which proves no vote was ever taken for that constitutional amendment. And Exhibit 6 (C.R. 87) to my complaint was a compact disc of the entire California State Assembly Journal for the

5

year 1913. California has put their Assembly and Senate history dating back to the 1800s on the Internet. The certified documents in Exhibit 5 conform exactly to the entries found in Exhibit 6.

No vote was ever taken by the California Assembly or Senate on that amendment, either on January 28, 1913, or any other day of that entire year.

As seen from examination of the journal records in Exhibit 5, the Assembly voted on many bills, and each and every vote was recorded by the name of the elected Assemblyman, with the "yeas" and "nays" recorded. Had a vote on the proposed constitutional amendment really taken place, that vote would be recorded. It was not because no vote was taken by that legislature.

Additionally, newspapers of that era failed to memorialize any vote in favor of this amendment. In 1913, there were two prominent newspapers publishing in the State of California. The *San Francisco Call* is available on the Internet through the Library of Congress, and every issue it published until shuttered on December 8, 1913 is available.

The date that California's legislature is claimed to have ratified the Seventeenth Amendment is January 28, 1913. In the *San Francisco Call*'s archives for January 1913 through February 1913, there is no mention of the California State Legislature voting on any constitutional amendment. On January 30, 1913, the *Call* published a litany of legislative actions taken through that date, but, there is not a single line

6

about something as important as this constitutional amendment.

The *New York Times* began publishing in 1851, and all of its issues are available on microfilm. Searching from January 29, 1913 through February 1913, there isn't any coverage of the California State Legislature ratifying the Seventeenth Amendment. On January 30, 1913, the *New York Times* printed three separate items dealing with state legislatures:

(1) Delaware Chooses Saulsbury, dealing with two Democratic members of the General Assembly and a vote deadlock;

(2) For Income Tax Amendment out of Charleston, W.Va.; that legislature ratified the so called income tax amendment known as the Sixteenth Amendment;

(3) Denver, CO, January 29: The Colorado House of Representatives adopted the Seventeenth Amendment allowing for direct election of U.S. Senators.

Since the *Times* was covering legislative issues in the state capitols, why would it not publish a vote by California's State Legislature to amend the U.S. Constitution?

The U.S. Constitution requires that an amendment must receive approval by "three-fourths" of the States. There being 48 States in this American Union in 1913, 36 States were required to ratify this proposed Seventeenth Amendment. However, neither Wisconsin nor California legally ratified it, and the truth of the matter is that this proposed amendment fell two States short of ratification. By a false proclamation

7

of the Secretary of State, William Jennings Bryan, the federal government was radically changed.

## SUMMARY OF ARGUMENT

To persuade the American public to assent to the adoption of ObamaCare, President Obama and other proponents of this legislation openly and frequently claimed that medical insurance premiums would decrease after it became law. Reality now shows those representations by the most powerful politicians in this country to be false. It is projected that ObamaCare will cause insurance premiums to increase 41% soon.[3]

But false statements by government officials are nothing new. The U.S. Constitution originally provided that the state legislatures would appoint Senators, but that original intent changed as a result of the Seventeenth Amendment.[4] It is alleged that the Seventeenth Amendment was ratified by 36 States, which is a bare constitutional threshold. This number of ratifying States includes Wisconsin and California. But, official public records from Wisconsin show that Wisconsin never adopted what Congress proposed regarding this amendment, and thus the claim that

---

[3] See: (accessed June 17, 2015):
http://www.forbes.com/sites/theapothecary/2013/11/04/49-state-analysis-obamacare-to-increase-individual-market-premiums-by-avg-of-41-subsidies-flow-to-elderly/

[4] "The Senate will be elected absolutely and exclusively by the State legislatures." James Madison in Federalist Papers #45.

8

Wisconsin "ratified" this proposed amendment is false. Further, official public records from California clearly disclose that neither legislative house in California ever ratified this amendment. The claim that California ratified this amendment is also false.

I filed my "Seventeenth Amendment ratification" lawsuit against the Texas Secretary of State to enjoin that official from "providing all 254 election administrators in the State of Texas with a list of candidates for U.S. Senate to be placed on the ballot in each county" because this amendment had not been ratified. My complaint not only made clear factual assertions that neither Wisconsin nor California had ratified this amendment, but that complaint had attached to it a wealth of public records from these States to prove these allegations. The Texas Secretary of State, Texas Attorney General, or somebody retained for that purpose may visit the Archives in these States, but that party will discover exactly what I have discovered: the same documents attached to my complaint.

American courts have developed two separate and distinct rules for litigation that involves the question of whether a law or constitutional provision has been duly enacted. One rule, the journal entry rule, permits a court to examine legislative journals to determine whether any law was legally enacted by a legislature. The other rule, the enrolled bill rule, prohibits use of legislative journals to make this determination, the enrolled bill being presumed conclusive. Texas courts follow a

9

modified version of the enrolled bill rule; see *Association of Texas Professional Educators v. Kirby*, 788 S.W.2d 827, 830 (Tex. 1990). Texas law thus allows examination of the evidence I have acquired regarding the non-ratification of the Seventeenth Amendment, and thus my lawsuit was perfectly valid, it stated a claim for relief, and it was error to dismiss it.

## ARGUMENT

### I. Standard of Review.

This appeal involves an order of the trial court dismissing my complaint pursuant to a motion filed by the Defendant Secretary of State. When considering in an appeal the validity of a motion to dismiss, an appellate court "construe[s] the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction over a claim." See *Wooley v. Schaffer*, 447 S.W.3d 71, 75 (Tex. App. —Houston 2014).

Here, attached to my complaint were a large number of public records and documents proving the various factual assertions I made in my complaint. These factual assertions must be taken as true when considering the validity of my complaint and whether the trial court erred in dismissing it. And as shown below, the case authorities in not only other States but also in Texas authorize lawsuits challenging the ratification of amendments to constitutions.

10

## II. My Standing For This Lawsuit.

My complaint plainly alleged my standing to bring it. I live in Big Spring, Texas, where my husband and I own a home; we pay real property taxes every year. I pay all sorts of taxes imposed by the State of Texas, including sales taxes, gasoline taxes, etc. But furthermore, I am complaining in this case that the Appellee Secretary of State is engaged in illegal and unlawful acts and I am seeking a declaratory judgment respecting those acts. Clearly, I have constitutional standing to pursue my claims.

In *Lone Star College System v. Immigration Reform Coalition of Texas (IRCOT)*, 418 S.W.3d 263 (Tex.App.-Houston [14th Dist.] 2013), that court described the elements for stating a claim like I have made here: "to establish taxpayer standing to enjoin the illegal expenditure of public funds, a plaintiff must show: (1) the plaintiff is a taxpayer, and (2) public funds are expended on the allegedly illegal activity." Id., at 274. Clearly, I am a "taxpayer" and also just as clearly, there are substantial funds being spent to conduct elections for U.S. Senators. As the court in *Lone Star College System* stated, "allegations of payment of these taxes are sufficient to support state taxpayer standing." Id., at 277.

## III. Waiver of Sovereign Immunity.

My complaint sought a declaratory judgment and injunction against a public official, and sovereign immunity has been waived for cases like this one. As the court

11

recounted in *Lone Star College System, supra,* "the Texas Supreme Court has declared that when claims challenge the validity of ordinances or statutes, relevant governmental entities must be made parties; thus, governmental immunity is waived for those entities. * * * Statutory challenges include claims that a statute is invalid for constitutional or nonconstitutional reasons and claims merely seeking interpretation or clarification of a statute." Id., at 271. Thus, a "suit asserting that a government officer acted without legal authority or seeking to compel a governmental official to comply with statutory or constitutional provisions is an *ultra vires* suit and is not subject to pleas of governmental immunity." Id., at 272. Here, a "sovereign immunity" defense is thus baseless and without foundation.

**IV. The Merits of My Complaint.**

**A. The Majority Rule: Issues Regarding the Adoption of Constitutional Amendments Present Valid Judicial Questions.**

In reference to the contention that the issue of the ratification of any amendment to a constitution presents only a political question, analysis of the determination of this issue by various state courts is very probative. The great weight of state authority is that issues concerning the ratification of amendments to state constitutions are properly judicial and not political issues. This proposition of law was precisely summarized by *In re McConaughy*, 106 Minn. 392, 119 N.W. 408 (1909), which held, after lengthy review of the authorities on this point, that an issue

12

regarding the ratification or adoption of a constitutional amendment was clearly to be judicially resolved.

Indeed, the U. S. Supreme Court has held that questions regarding the existence or non-existence of state laws presents a judicial question. In *Town of South Ottawa v. Perkins*, 94 U.S. 260 (1877), the U. S. Supreme Court succinctly stated:

"There can be no estoppel in the way of ascertaining the existence of a law. That which purports to be a law of a State is a law or it is not a law, according as the truth of the fact may be, and not according to the shifting circumstances of parties . . . And whether it be a law or not a law is a judicial question, to be settled and determined by the courts and judges", Id., at 267.

"... but, on general principles, the question as to the existence of a law is a judicial one, and must be so regarded by the Courts of the United States," Id., at 268.

When an issue regarding the existence of a law is raised, the U.S. Supreme Court has expressly sanctioned courts to determine the validity of such law by review of any public documents available which render aid to the judicial mind. This was clearly stated in *Gardner v. Collector*, 73 U.S. (6 Wall.) 499, 511 (1868), where the U.S. Supreme Court stated:

"We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such questions; always seeking first for that which in its nature is most appropriate, unless the positive law has enacted a different rule."

An inexhaustive review of the multitude of state cases holding that an issue

13

regarding the adoption of a constitutional amendment presents a judicial question is particularly appropriate under these circumstances. The substance of these cases is that state courts will hold an amendment invalid if it has not been properly and lawfully adopted, this invalidity being determined by examination of many public records, most notably legislative journals. It must also be noted that while state courts do inquire into the adoption of amendments, they sometimes have a different rule in regards to legislation, with some courts following the "journal entry rule," and others following the "enrolled bill rule." See *Field v. Clark*, 143 U.S. 649, 12 S. Ct. 495 (1892).

Probably the first state court to be confronted with the issue concerning adoption of constitutional amendments was the Alabama Supreme Court. In *Collier v. Frierson*, 24 Ala. 100, 109 (1854), that court invalidated an amendment to the state constitution for the reason that it had not been properly adopted, the court holding:

> "It has been said, that certain acts are to be done – certain requisitions are to be observed, before a change can be effected. But to what purpose are these acts required, or these requisitions enjoined, if the Legislature or any other department of the government, can dispense with them. To do so, would be to violate the instrument which they are sworn to support; and every principle of public law and sound constitutional policy requires the courts to pronounce against every amendment, which is shown not to have been made in accordance with the rules prescribed by the fundamental law."

See also *Alabama v. Manley*, 441 So. 2d 864 (Ala. 1983). The rule enunciated in *Collier* has been frequently followed in many cases in other jurisdictions. See *Rice*

14

*v. Palmer*, 78 Ark. 432, 96 S.W. 396 (1906); *Knight v. Shelton*, 134 F. 423 (E.D. Ark. 1905); *Oakland Paving Co. v. Hilton*, 69 Cal. 479, 11 P. 3 (1886); *Livermore v. Waite*, 102 Cal. 113, 36 P. 424 (1894); *People v. Curry*, 130 Cal. 82, 62 P. 516 (1900); *Crawford v. Gilchrist*, 64 Fla. 41, 59 So. 963, 967 (1912) ("The act of the Secretary of State in publishing at public expense and in certifying to the county commissioners proposed amendments of the Constitution is in its nature ministerial, involving the exercise of no discretion, and, if the act is illegal, it may be enjoined in appropriate proceedings by proper parties, there being no other adequate remedy afforded by law. When the alleged illegal act sought to be enjoined has relation to legislative action, such action may be considered in determining the legality or illegality of the act enjoined. This is not an interference by the courts with the legislative department of the government."); *Hammond v. Clark*, 136 Ga. 313, 71 S.E. 479 (1911); *Green v. State Board of Canvassers*, 5 Idaho 130, 47 P. 259 (1896); *McBee v. Brady*, 51 Idaho 761, 100 P. 97 (1909); *City of Chicago v. Reeves*, 220 Ill. 274, 77 N.E. 237 (1906); *People v. Stevenson*, 281 Ill. 17, 117 N.E. 747 (1917); *State v. Swift*, 69 Ind. 505 (1880); *In re Denny*, 156 Ind. 104, 59 N.E. 359 (1901); *Ellingham v. Dye*, 178 Ind. 336, 99 N.E. 1 (1912); *Bennett v. Jackson*, 186 Ind. 533, 116 N.E. 921 (1917); *Koehler v. Hill*, 60 Iowa 543, 14 N.W. 738, 741-42, reh. den., 15 N.W. 609 (1883); *State v. Brookhart*, 113 Iowa 250, 84 N.W. 1064 (1901); *State v. Sessions*, 87 Kan. 497, 124 P. 403 (1912); *McCreary v. Speer*, 156 Ky. 783, 162

15

S.W. 99 (1914); *Graham v. Jones*, 198 La. 507, 3 So. 2d 761, 793-94 (1941)("It is said that chaos and confusion in the governmental affairs of the State will result from the Court's action in declaring the proposed constitutional amendment void. This statement is grossly and manifestly inaccurate. If confusion and chaos should ensue, it will not be due to the action of the Court but will be the result of the failure of the drafters of the joint resolution to observe, follow and obey the plain essential provisions of the Constitution. Furthermore, to say that, unless the Court disregards its sworn duty to enforce the Constitution, chaos and confusion will result, is an inherently weak argument in favor of the alleged constitutionality of the proposed amendment. It is obvious that, if the Court were to countenance the violations of the sacramental provisions of the Constitution, those who would thereafter desire to violate it and disregard its clear mandatory provisions would resort to the scheme of involving and confusing the affairs of the State and then simply tell the Court that it was powerless to exercise one of its primary functions by rendering the proper decree to make the Constitution effective."); *Loring v. Young*, 239 Mass. 349, 132 N.E. 65 (1921); *Rich v. Board of State Canvassers*, 100 Mich. 453, 59 N.W. 181 (1894); *State v. Powell*, 77 Miss. 543, 27 So. 927 (1900); *Gabbert v. Chicago, R. I. and P. Ry. Co.*, 171 Mo. 84, 70 S.W. 891 (1902); *State v. Tooker*, 15 Mon. 8, 37 P. 840 (1894); *Durfee v. Harper*, 22 Mon. 354, 56 P. 582 (1899); *State v. Babcock*, 17 Neb. 188, 22 N.W. 372 (1885); *State v. Tufly*, 19 Nev. 391, 12 P. 835 (1887); *State v. Davis*, 20

16

Nev. 220, 19 P. 894 (1888); *Bott v. Wurts*, 63 N.J.L. 289, 43 A. 744 (1899); *State v. Foraker*, 46 Ohio St. 677, 23 N.E. 491 (1890); *State v. State Board of Equalization*, 107 Okl. 118, 230 P. 743 (1924); *Kadderly v. Portland,* 44 Ore. 118, 74 P. 710 (1903); *Lovett v. Ferguson*, 10 S.D. 44, 71 N.W. 765 (1897); *Cudihee v. Phelps*, 76 Wash. 314, 136 P. 367 (1913); *Gottstein v. Lister*, 88 Wash. 462, 153 P. 595 (1915); *State v. Cunningham*, 81 Wis. 440, 51 N.W. 724 (1892); and *State v. Marcus*, 160 Wis. 354, 152 N.W. 419 (1915).

The above survey of state cases regarding this issue, while not being exhaustive and inclusive of cases from every state, clearly shows that the great weight of state authority holds that questions concerning the adoption of an amendment to a state constitution are considered as judicial and not political issues.

**B. The Necessity of Concurrence for Legislative Acts and Constitutional Amendments.**

It is a common feature of many state constitutions to set forth the method through which an amendment to the constitution can be made. Such methods typically require one house of the legislature to propose an amendment, and this proposition must be accepted by the other legislative house. Some constitutions also require a subsequent legislative session to concur in a proposed amendment before it can be submitted to the voters at a general election. Other typical features related to propositions to amend state constitutions include publication of the proposed

17

amendment for a period of time before the election, and also a majority vote in favor of the amendment by the total number of voters voting in the election. The challenges to the adoption of amendments to state constitutions have arisen in situations where it is alleged that the procedure or method required by the constitution has been violated. As seen from the above review, state courts have invalidated amendments when such have not been adopted in the method required by the constitution.

To adopt a constitutional amendment, the state courts require not only precise conformity with the procedural method outlined in a constitution, but also precise concurrence. This means that both houses of a legislature must agree upon the same amendment, and this same amendment must be adopted by the people. No state court would sanction an amendment in a situation where both houses did not agree upon the same amendment, or where the people voted upon an amendment different from that proposed by the legislature. A failure in this respect vitiates the entire amendment because there is not complete but incomplete agreement on the amendment.

This was aptly demonstrated in *Koehler v. Hill*, 60 Iowa 543, 14 N.W. 738, 741-42, reh. den., 15 N.W. 609 (1883), where an amendment was determined not to have been adopted in accordance with the requirements of the Iowa Constitution because it was shown that there were minor word omissions between the amendment proposed by one legislative session and that proposed by a subsequent legislative session, which received the majority of the votes at election:

18

"Not only so, but each house of each general assembly must agree to the same amendment, and it must be adopted by the electors. It matters not if not only every elector, but every adult person in the state, should desire and vote for an amendment to the constitution, it cannot be recognized as valid unless such vote was had in pursuance of, and in substantial accord with, the requirements of the constitution. If, then, both houses of the eighteenth general assembly did not agree to the resolution which was adopted and ratified by the electors at the special election held for that purpose, it is not a part of the constitution, and cannot be so recognized."

Constitutions are general frameworks of government and are considered paramount and supreme law. Because they should not be changed for light or transient causes, propositions to change a constitution by amendment are major undertakings. Not only is it hard to amend a constitution, it is also hard to repeal an amendment once it has become a feature of the constitution. This is in contrast with ordinary legislation, which is, comparatively, easier to enact, change or repeal. Statutes can be passed on one day and amended or repealed the next. Thus, it is quite apparent that constitutional amendments are far more important, when considering their adoption, than enactment of ordinary legislation. Since they are relatively more important than ordinary legislation, an examination of the preciseness of concurrence in legislation required by the state courts is invaluable in determining the preciseness of concurrence required to adopt a constitutional amendment.

The proposition of law demonstrated by the state cases in reference to the enactment of ordinary legislation is that both legislative bodies must adopt the same bill and the same bill must be presented to the governor for his approval or rejection.

19

If there are material differences between the bill adopted by one legislative body and that adopted by the other, or if there are differences between that which is adopted by both houses and the bill approved by the governor, the state courts will hold that there was no valid enactment of the statute. See *Ashcroft v. Blunt*, 696 S.W.2d 329 (Mo. banc 1985); *State v. Fridley*, 126 Ariz. 419,616 P.2d 94, (Ariz.App. Div. 1 1980); and *Watts v. Town of Homer*, 207 So.2d 844 (La.App. 2 Cir. 1968). If this preciseness is required for ordinary legislation, then at least the same or a more stringent standard is required in the adoption of a constitutional amendment.

An excellent example of a case dealing with concurrence in a proposed bill is *Moog v. Randolph*, 77 Ala. 597 (1884). Here, the Alabama legislature had adopted a bill which contained a certain phrase inserted in the same by way of amendment. In the bill sent to the governor, this phrase had been deleted, probably through error. Nonetheless, the Alabama Supreme Court struck the entire act, and in doing so stated:

> "I take it furthermore as a sound rule, also settled by our decisions, that if the bill which is passed by the General Assembly varies materially, in substance and legal effect, from that which is approved by the Governor – especially where this subject of variance involves a matter of amendment, without the incorporation of which in the bill one of the houses refused to concur with the other in its final passage – then there exists such a want of legal and actual identity between the bill passed and the one approved, as that neither of them acquires the force of a valid and constitutional enactment. In such a case, the bill passed by the General Assembly is not the one approved by the Governor, and the one approved by the Governor is, *e converso*, not the one passed by the General Assembly. The courts would be assuming too much, to presume that the same reasons which induced the one house to refuse to concur with the other, except on the condition of incorporating its amendment, might not

20

likewise operate to induce the Governor to withhold his approval of the entire measure, without which it must have failed to become a law," Id., at 599.

"Let us suppose, for illustration, that the bill in its complete form, as it passed the two houses, had been signed by the presiding officers of these respective bodies, and had been presented to the Governor for his approval, and he had drawn his pen through this same amendment, and, after thus expunging it, had approved the residue of the measure, this being done as a condition precedent to affixing his signature. Would there not exist, in such a case, precisely the same difference in fact between the bill passed and that approved, as is here presented? The part expunged in the one case, and the part omitted in the other, being identical, the identity of the remainder is axiomatic. Could any one seriously contend, that the approval of a part of a measure, however honestly done in the conviction of its propriety, would operate to give any legal force to the part thus approved? And yet, where is the difference, in practical effect, between the two cases? The clear logic of the case lies in the axiom, that a bill is an entirety, and a law is the product of the combined, harmonious and unanimous action of the legislative and executive departments of government, each acting strictly within the scope of its constitutional authority, and according to the prescribed forms of the constitutional mandate," Id., at 600.

This is an established proposition of law in Alabama and the Alabama Supreme Court has invalidated other pretended acts of legislation on this basis. See *King Lumber Company v. Crow*, 155 Ala. 504, 46 So. 646 (1908); *Mayor and Aldermen of West End v. Simmons*, 165 Ala. 359, 51 So. 638 (1910); *Yancy v. Waddell*, 139 Ala. 524, 36 So. 733 (1904); and *Board of Revenue of Jefferson County v. Crow*, 141 Ala. 126, 37 So. 469, (Ala. 1904). A large number of other courts have held similarly. See *Rogers v. State*, 72 Ark. 565, 82 S.W. 169 (1904); *McDougal v. Davis*, 201 Ark. 1185, 143 S.W. 2d 571 (1940); *State v. Deal*, 24 Fla. 293, 4 So. 899 (1888); *Volusia County v. State*, 98 Fla. 1166, 125 So. 375 (1929), reh. den., 125 So. 813 (1930);

21

*State v. Skaley*, 108 Fla. 506, 146 So. 544 (1933); *Hillsborough County v. Temple Terrace Assets Co.*, 111 Fla. 368, 149 So. 473 (1933); *State v. City of Sanford*, 113 Fla. 750, 152 So. 193 (1934); *People v. Lueders*, 283 Ill. 287, 119 N.E. 339 (1918); *State v. Laiche*, 105 La. 84, 29 So. 700, 701 (1901); *County Commissioners of Washington County v. Baker*, 141 Md. 623, 119 A. 461 (1922); *Carnegie Institute of Medical Laboratory Technique, Inc. v. Approving Authority for Schools for Training Medical Laboratory Technologists*, 213 N.E.2d 225 (Mass. 1965); *Rode v. Phelps*, 80 Mich. 598, 45 N.W. 493 (1890); *State v. McClelland*, 18 Neb. 236, 25 N.W. 77 (1885); *Weis v. Ashley*, 59 Neb. 494, 81 N.W. 318 (1899); *Moore v. Neece*, 80 Neb. 600, 114 N.W. 767 (1908); *In re Jaegle*, 83 N.J.L. 313, 85 A. 214 (1912); *In re Kornbluh*, 134 N.J.L. 529, 49 A. 2d 255 (1946); *Oregon Business and Tax Research, Inc. v. Farrell*, 176 Ore. 532, 159 P. 2d 822 (1945); *Fuqua v. Davidson County*, 189 Tenn. 645, 227 S.W. 2d 12 (1950); *State v. Wendler*, 94 Wis. 369, 68 N.W. 759 (1896); *State v. Wisconsin State Board of Medical Examiners*, 172 Wis. 317, 177 N.W. 910 (1920); and *State v. Swan*, 7 Wyo. 166, 51 P. 209 (1897).

In this case, Wisconsin amended the amendment that Congress proposed, yet Congress did not reciprocate to this change. Wisconsin thus did not agree with the amendment that Congress proposed.

## C. Conclusive Presumptions Are Unconstitutional.

In my complaint, I allege some very simple facts. The U.S. Constitution

22

requires "three-fourths" of the States to ratify constitutional amendments. In 1913, there were 48 States here in the United States of America, and thus it was required that 36 states ratify the Seventeenth Amendment. Secretary Bryan claimed in his proclamation of ratification that exactly 36 states had ratified this amendment and thus it was a part of the U.S. Constitution, and he issued such proclamation pursuant to Revised Statutes §205 quoted above. The federal courts hold that the question of ratification of an amendment as proclaimed by the Secretary of State presents not a judicial but a political question which the courts cannot address, those courts according to that proclamation a "conclusive" or "irrebuttable presumption". I argue here that conclusive presumptions are unconstitutional, at least in this context of according Secretary Bryan's proclamation conclusive effect. See *Medlin v. County of Henrico Police*, 34 Va. Ct. App. 396, 407 n.5, 542 S.E.2d 33, 39 n.5 (2001) ("irrebuttable presumptions are unconstitutional").

"A conclusive presumption is irrebuttable; 'when fact B is proven, fact A must be taken as true, and the adversary is not allowed to dispute this at all'." *Hammontree v. Phelps*, 605 F.2d 1371, 1374 fn 3 (5th Cir. 1979). Here, "fact B" as noted above is Secretary Bryan's 1913 proclamation that the Seventeenth Amendment was ratified, wherein he claimed that the 36 States that ratified the amendment included Wisconsin and California. What cannot be disputed is whether Wisconsin and California did in fact ratify the amendment, and "fact A" in the above illustration is

23

the supposed facts that Wisconsin and California did in fact and as a matter of law ratify the amendment. However, legitimate public records from these States present facts far different and exactly opposite: Wisconsin rejected the amendment that Congress proposed because it amended this amendment, and California never voted on it. The federal courts have held that proclamations like Secretary Bryan's issued pursuant to Revised Statutes §205 are conclusive, and the falsity of such a proclamation cannot be shown. Thus, Revised Statutes §205 has been construed so as to conclusively preclude impeachment of such proclamations.

In *Heiner v. Donnan*, 285 U.S. 312, 52 S.Ct. 358 (1932), the U.S. Supreme Court was concerned with a conclusive presumption created by statute that gifts made by a deceased within two years of death were made in contemplation of death and were thus includible within the decedent's estate for tax purposes. In declaring this statute unconstitutional because it created an irrebuttable presumption, the Supreme Court stated:

> "[A] statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert is so arbitrary and unreasonable that it cannot stand under the Fourteenth Amendment," Id., at 325.

> "A rebuttable presumption clearly is a rule of evidence which has the effect of shifting the burden of proof [citation omitted]; and it is hard to see how a statutory rebuttable presumption is turned from a rule of substantive law as the result of a later statute making it conclusive. In both cases it is a substitute for proof; in the one open to challenge and disproof, and in the other conclusive. However, whether the latter presumption be treated as a rule of evidence or of substantive law, it constitutes an attempt, by legislative fiat, to enact into

24

existence a fact which here does not, and cannot be made to, exist in actuality, and the result is the same....This court has held more than once that **a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment,**" Id., at 329. [emphasis added]

"If a legislative body is without power to enact as a rule of evidence a statute denying a litigant the right to prove the facts of his case, certainly the power cannot be made to emerge by putting the enactment in the guise of a rule of substantive law," Id., at 329.

There are lots of legal presumptions found in the law, and one concerns presumptions regarding the mailing of letters, a simple illustration that happens to be directly relevant here. During the Viet Nam war, there were lots of draft resisters who were prosecuted for engaging in that conduct. Pursuant to those draft laws, certain regulations had been promulgated which declared that the mailing of a notice to report for induction conclusively presumed that the draftee had been notified of such induction. In prosecutions for draft evasion which were premised upon this particular regulation, the validity of it was naturally drawn into question. In the first case concerning this issue, *United States v. Bowen*, 414 F.2d 1268, 1273 (3rd Cir. 1969), this regulation providing for an irrebuttable presumption that a mailed letter was received and provided notice to the addressee was held unconstitutional:

"The regulation in effect creates an 'irrebuttable or conclusive presumption' that mail sent is received. Such a presumption would make irrelevant any evidence the defendant-appellant did offer or might have offered to prove he did not receive the forms. Even if we were not dealing with a regulation that involved the critical issue of notice, the regulation cannot stand. We believe the regulation to be unconstitutional as violative of the due process clause of

25

the Fifth Amendment insofar as it purports to establish such an irrebuttable presumption.

"No administrative agency, nor even a legislature, may make the proof of one fact conclusive proof of another fact **in any proceeding, civil or criminal**, to the detriment of a private party." [emphasis added]

Following *Bowen* was a decision of an identical nature in *United States v. Simmons*, 476 F.2d 33, 37 (9th Cir. 1973). Here, the same regulation at issue in *Bowen* was likewise found to be unconstitutional as creating an irrebuttable presumption:

"The impact of the regulation and the instruction given, in effect, bootstraps mailing into receipt and receipt into notice. We, therefore, agree with the appellant that the instruction as given was violative of due process."

And in *United States v. Perry*, 474 F.2d 983, 984 (10th Cir. 1973), a conviction for draft evasion was likewise being scrutinized on due process grounds. Here, the government's proof of the mailing of the notice to report to draftee Perry consisted simply of showing a carbon copy of a letter contained within his administrative record. The majority of that court concluded that just producing that copy failed to create any inference of either its mailing or its receipt:

"Judges Breitenstein and McWilliams believe that the presence of the carbon copy in the file is proof of neither mailing nor time of mailing and that, on the record presented, mailing cannot be inferred from writing."

That court likewise held as did the courts in both *Bowen* and *Simmons* that the regulation in question was unconstitutional as creating an irrebuttable presumption.

26

See also *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241 (1943); *United States v. Lake*, 482 F.2d 146 (9th Cir. 1973); and *United States v. Belgrave*, 484 F.2d 915 (3rd Cir. 1973).

The issue presented here is far more important than presumptions used to prosecute draft evaders. This case concerns presumptions having a relationship to the adoption of amendments to the U.S. Constitution. Secretary Bryan's proclamation stated that both Wisconsin and California had ratified this amendment, and this mere statement is alleged to preclude proof from Wisconsin and California documents and records showing otherwise and impeaching that proclamation. But, it is unquestioned that Wisconsin amended the constitutional amendment that Congress proposed, which legally means that Wisconsin did not ratify the amendment. But further, having personally researched the matter of whether California ratified the amendment, I can truthfully state, as supported by the conclusive documents that I have in my possession, that California never ratified this amendment. Just this fact alone demonstrates that Secretary Bryan's proclamation of ratification dated May 31, 1913 is false in this respect: his claim that California ratified this amendment is fraudulent. "Of course, in considering whether the Constitution has been violated, no conclusive presumption of truth is to be accorded the recitals of the *proces verbal* or of any other record, but the true facts may be developed." *Collins v. Walker*, 329 F.2d 100, 104 (5th Cir. 1964).

27

The federal courts claim that I cannot impeach Secretary Bryan's proclamation because that proclamation, issued pursuant to Revised Statutes §205, creates a conclusive presumption. But caselaw has changed substantially since that rule was developed, and now conclusive presumptions, at least in the context of this case, are unconstitutional. I thus can impeach Secretary Bryan's proclamation of ratification dated May 31, 1913, and since at most only 34 or 35 states ratified this amendment, it was not constitutionally adopted.

**D. Application of Principles to This Appeal.**

In response to my lawsuit, the Secretary of State filed a motion to dismiss, which the trial court granted.

I attached to my complaint copies of the various public records and documents from both Wisconsin and California that conclusively demonstrate the facts I alleged. I am not arguing that these documents created any presumption, and the Secretary of State, represented by the Attorney General, is more than welcome to engage in his own investigation of the public records of Wisconsin and California to disprove what I and many others have found. I feel very confident that the Attorney General will eventually realize that my public records from these States prove my allegations and he will thus stipulate to them.

However, at the stage of a motion to dismiss, my allegations must be construed as being true (and they will eventually be shown to be indisputable). Did my

28

complaint state a valid cause of action? In *Association of Texas Professional Educators v. Kirby*, 788 S.W.2d 827, 830 (Tex. 1990), our Supreme Court acknowledged that it will follow a modified version of the enrolled bill rule: "when the official legislative journals, undisputed testimony by the presiding officers of both houses, and stipulations by the attorney general acting in his official capacity conclusively show the enrolled bill signed by the governor was not the bill passed by the legislature, the law is not constitutionally enacted. When the official legislative journals, presiding officers and attorney general all concur that the enrolled bill is not the bill passed by the legislature, the exception applies as a matter of law."

Here, I contended that neither Wisconsin nor California validly ratified the Seventeenth Amendment and I offered copies of the actual public records showing that these are actual facts. The natural and logical conclusion that follows is that this amendment was "not constitutionally enacted."

My complaint stated a valid cause of action and the trial court erred when it dismissed it.

/ / / / / /

/ / / / / /

/ / / / / /

/ / / / / /

29

## PRAYER

For the reasons noted above, the order of the trial court dismissing my lawsuit should be reversed and this cause remanded back to that court for further proceedings.

Respectfully submitted this the 25th day of June, 2015.

Devvy Kidd
Appellant *Pro se*
P.O. Box 1102
Big Spring, Texas 79721
432-264-7869
devvyk@npn.net

CAUSE NO. D-1-GN-14-003900

| | | |
|---|---|---|
| DEVVY KIDD, | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff* | § | |
| | § | |
| vs. | § | |
| | § | |
| NANDITA BERRY, | § | TRAVIS COUNTY, TEXAS |
| TEXAS SECRETARY OF STATE | § | |
| | § | |
| *Defendant* | § | |
| | § | |
| | § | 53rd JUDICIAL DISTRICT |
| | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS UNDER RULE 91a

On this day came to be heard, the Motion to Dismiss Under Rule 91a filed by Defendant Nandita Berry, in her official capacity as Secretary of State. After reviewing said Motion, any response thereto, and arguments of counsel, the Court is of the opinion that Defendant's Motion to Dismiss Under Rule 91a should be GRANTED.

It is therefore ORDERED, ADJUDGED AND DECREED that Defendant's Motion is granted and that Plaintiff's Original Petition is dismissed with prejudice.

SIGNED on _December 4_, 2014.

_____
PRESIDING JUDGE

31

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), I certify that this document complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2). I certify that this document contains 7790 words.

*Devvy Kidd*
Devvy Kidd

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served by email a copy of the foregoing

brief upon the below named counsel for the Secretary of State and have mailed a copy

of this brief to: CERTIFIED MAIL RECEIPT :
7014 0150 0000 4731 2445

Adam N. Bitter
Attorney General's Office
P.O. Box 12548
Austin, Texas 78711-2548

Dated this the 25th day of June, 2015.

*Devvy Kidd*
Devvy Kidd

32